Benjamin J. Schnayerson (State Bar No. 257857)
Liam N. Gaarder-Feingold (State Bar No. 345747)
JACKSON LEWIS P.C.
50 California Street, 9th Floor
San Francisco, California 94111-4615
Telephone:  (415) 394-9400
Facsimile:  (415) 394-9401
E-mail:  Ben.Schnayerson@jacksonlewis.com
E-mail:  Liam.Gaarderfeingold@jacksonlewis.com

Attorneys for Defendant
TAILORED SHARED SERVICES, LLC
(erroneously sued as TAILROED SHARED
SERVICES, LLC dba TAILORED BRANDS,
INC.)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ROSA,<br><br>                    Plaintiff,<br><br>          v.<br><br>TAILORED SHARED SERVICES, LLC dba<br>TAILORED BRANDS, INC., and DOES 1<br>through 10, inclusive,<br><br>                    Defendants. | Case No.<br><br>**DECLARATION OF LIAM N.<br>GAARDER-FEINGOLD IN SUPPORT<br>OF REMOVAL**<br><br>Complaint Filed:    06/23/2025<br>FAC Filed:           07/08/2025<br>Removal Filed:<br>Trial Date:          Not set |

I, Liam N. Gaarder-Feingold, declare:

1.      I am an attorney licensed to practice law in the State of California and admitted to appear before this Court.  I am an associate with the law firm of Jackson Lewis P.C., attorneys of record in this matter for Defendant TAILORED SHARED SERVICES, LLC ("TSS"), erroneously sued as TAILORED SHARED SERVICES, LLC dba TAILORED BRANDS, INC. ("Defendant). With the exception of matters based on information and belief, I have personal knowledge of the matters stated herein, and if called to testify as to these matters, I could and would do so competently.

1

2.    On June 23, 2025, Plaintiff CHRISTINA ROSA ("Plaintiff") filed a Complaint against Defendant in the Superior Court of California for the County of San Francisco, bearing Case Number CGC-25-626353. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

3.    On July 8, 2025, Plaintiff filed her First Amended Complaint for Damages wherein Plaintiff changed her Fourth Cause of Action to Retaliation and Unlawful Employment Practices Based on Complaining and Reporting Discrimination. A true and correct copy of the Summons and First Amended Complaint and all other documents served by Plaintiff is attached hereto as **Exhibit B**.

4.    I am informed and believe that Plaintiff served the First Amended Complaint on Defendant on July 17, 2025. I am also informed and believe that Plaintiff never served Defendant with a copy of the original Complaint.

5.    Defendant filed its Answer to Plaintiff's unverified Complaint in San Francisco County Superior Court on August 15, 2025. A true and correct copy of Defendant's Answer is attached hereto as **Exhibit C**.

6.    As of the date of this declaration, Exhibits A through C constitute all of the pleadings received, served or filed by Defendant in this matter, and no further proceedings have occurred in the state court.

I am a member of the Bar of this Court and declare, under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed this 18th day of August 2025, at San Francisco, California.

_____
Liam N. Gaarder-Feingold

Declaration of Liam N. Gaarder-Feingold ISO Removal

Case No. CGC-25-626353

# EXHIBIT A

ANGELA M. ALIOTO (SBN 130328)
ANGELA MIA VERONESE (SBN 269942)
**LAW OFFICES OF JOSEPH L. ALIOTO**
**AND ANGELA ALIOTO**
700 Montgomery Street
San Francisco, CA  94111-2104
Telephone: (415) 434-8700
Facsimile: (415) 438-4638

JOSEPHINE L. ALIOTO (SBN 282989)
JESSICA NG (SBN 352917)
**THE VEEN FIRM LLP**
20 Haight Street
San Francisco, California 94102
Telephone: (415) 673-4800
Facsimile: (415) 771-5845
JA.team@VeenFirm.com

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**06/23/2025**
**Clerk of the Court**
BY: SHENEQUA GLADNEY
Deputy Clerk

Attorneys for Plaintiff CHRISTINA ROSA

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN FRANCISCO       CGC-25-626353

| | |
|---|---|
| CHRISTINA ROSA,<br><br>          Plaintiff,<br><br>vs.<br><br>TAILORED BRANDS, INC., and DOES 1 through 10, inclusive,<br><br>          Defendants. | **CASE NO.**<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**1. DISCRIMINATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON PHYSICAL AND/OR MENTAL DISABILITY;**<br>**2. DISCRIMINATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON FAILURE TO REASONABLY ACCOMMODATE IN GOOD FAITH;**<br>**3. DISCRIMINATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN GOOD FAITH;**<br>**4. RETALIATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON COMPLAINING AND REPORTING DISCRIMINATION AND UNFAIR TREATMENT;**<br>**5. DISCRIMINATION BASED ON VIOLATION OF CFRA LEAVE;**<br>**6. BREACH OF THE IMPLIED-IN-FACT CONTRACT OF EMPLOYMENT;**<br>**7. FAILURE TO PAY OVERTIME WAGES;**<br>**8. FAILURE TO PAY PREMIUM WAGES FOR MISSED 30 MINUTE DUTY-FREE MEAL PERIODS;**<br>**9. FAILURE TO PAY PREMIUM** |

**WAGES FOR MISSED 10 MINUTE
DUTY-FREE REST PERIODS; and
10. FAILURE TO PROVIDE ACCURATE
WAGE STATEMENT**

**DEMAND FOR JURY TRIAL**

Plaintiff CHRISTINA ROSA, alleges as follows:

**I.    JURISDICTION, VENUE AND PARTIES**

1.    During the relevant times herein mentioned, Plaintiff CHRISTINA ROSA (hereinafter referred to as either "CHRISTINA ROSA" or "Plaintiff") is a citizen of the United States and a resident in the City of San Francisco, County of San Francisco, State of California.

2.    This is a case of discrimination based on mental and physical disabilities, denial of reasonable accommodation, refusal to engage in the interactive process in good faith, violations of CFRA, gender discrimination, harassment, hostile work environment, retaliation, wrongful termination, wage and hour violations, and intentional infliction of emotional distress.  The Defendant TAILORED BRANDS, INC. (hereinafter referred to "TAILORED BRANDS") has refused to take the necessary steps to abate, prevent and eliminate such behavior and instead terminated this Plaintiff.

3.    Defendant TAILORED BRANDS, is an American retail holding company for various men's apparel stores, headquartered in Houston, Texas, with additional corporate offices in Dublin, California.

4.    Venue in this Court is proper because all of the unlawful employment practices alleged herein occurred within the City of San Francisco, County of San Francisco, State of California.

5.    Plaintiff is ignorant of the true names or capacities of the Defendants sued here under the fictitious names DOE 1 through DOE 10, inclusive.  Plaintiff is informed and believes that each DOE Defendant was responsible in some manner for the occurrences and injuries alleged in this Complaint.

6.    At all times mentioned in the causes of action into which this paragraph is incorporated by reference, each and every Defendant was the agent or employee of TAILORED

BRANDS.   In doing the things alleged in the causes of action into which this paragraph is incorporated by reference, each and every Defendant was acting within the course and scope of the agency or employment and was acting with the consent, permission, and authorization of TAILORED BRANDS.  All actions of each Defendant alleged in the causes of action into which this paragraph is incorporated by reference were ratified and approved by the officers or managing agents of TAILORED BRANDS.

7.     In doing the things hereinafter alleged, the individual Defendants, whether named or unnamed, were acting in concert with and under the direction, or with the express or implied ratification, of their superiors, supervisors and employer and the named Defendants.  Plaintiff is informed and believes and thereon alleges that the conduct of the individually named and unnamed Defendants was known to the other Defendants and such conduct was expressly or impliedly condoned and ratified by the named Defendants.  Plaintiff is further informed and believes that the named Defendants failed to criticize, censure, terminate, suspend or otherwise take any action against the unnamed Defendants once informed of their conduct.

8.     Damages in this matter exceed and are greater than $25,000 thereby subject to the San Francisco County Superior Court's unlimited jurisdiction.

## II.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.     Plaintiff has fully and timely exhausted her statutory administrative remedies with the California Civil Rights Department (CRD) [formerly the California Fair Employment and Housing].

## III.     FACTUAL ALLEGATIONS

10.     CHRISTINA ROSA, currently age 42, of Middle Eastern descent and heritage - Asian/White/Caucasian, with over ten (10) years in the eCommerce and Digital Product Management space.  CHRISTINA ROSA, is a recipient of a Bachelor of Science degree in Art History from the University of California at Berkeley; a recipient of a Masters FA in Merchandising and Product Development from the Academy of Art University San Francisco; and Registered SCRUM Master & Registered Product Owner.

11.     In or about 2015, CHRISTINA ROSA was medically diagnosed with having PTSD

1    and chronic anxiety, IBS, and depression.    TAILORED BRANDS was ostensibly aware of

2    CHRISTINA ROSA's medical diagnosis.

3         12.    On or about September 24, 2021, TAILORED BRANDS provided CHRISTINA

4    ROSA with an Offer of Employment letter welcoming her to the Company stating that her

5    position would be titled Product Manager eCommerce on the TAILORED BRANDS team with a

6    pay rate of $150,000.00 yearly, with the Company's Annual Incentive Plan of 10%, working

7    remotely. Though CHRISTINA ROSA was classified as a "manager" by TAILORED BRANDS,

8    she was truly a non-exempt employee as defined by the California DLSE and IWC Order No. 4-

9    2001 as hereinafter alleged.

10        13.    On or about October 18, 2021, after accepting TAILORED BRANDS' Offer of

11   Employment, CHRISTINA ROSA officially began employment as a fulltime salaried eCommerce

12   Product Manager.

13        14.    On or about July 19, 2022, VP Digital Product Kelly Helthall provided

14   CHRISTINA ROSA with a "Compensation Change" adjustment letter due to her role shifting

15   from a management position to an individual contributor and new job title of Sr. Product Manager.

16   Specifically, her current base salary of $153,690 and Bonus Target $18,443 (12%) would change

17   to $156,764 with a Bonus Target of $15,676 (10%), effective July 24, 2022.  CHRISTINA ROSA

18   would continue in her non-exempt position with no supervisory or management authority of any

19   subordinate employees.

20        15.    On or about July 25, 2022, CHRISTINA ROSA was assigned to a new manager,

21   Carlette Bell.

22        16.    In or about August 2022, CHRISTINA ROSA requested to be placed fulltime on

23   the "Wedding Wingman" product ["WW" – Wedding Wingman brainstormed, dubbed, and coined

24   by CHRISTINA ROSA] which was also recommended by Bain & Company, due to the project's

25   depth scope and tight deliverable timeline.  CHRISTINA ROSA brought these facts and requests

26   to her manager, Carlette Bell, as well as leadership.  CHRISTINA ROSA's dedication, expertise

27   and work ethic on WW did not go unnoticed.  On or about August 16, 2022, SVP of Digital

28   Suzanne Scott emailed CHRISTINA ROSA praising her for doing a good job on the WW project.

1  Moreover, on or about September 28, 2022, CHRISTINA ROSA (and the WW team) successfully

2  launched the PMVP of WW on time, and she received more recognition and praise for her work-

3  ethic, breadth of skills, and positive and upbeat personality – teammates & stakeholders

4  commented that she was "sunshine" to the group and asked "what couldn't Christina do?"

5  CHRISTINA ROSA worked on average 70 hours plus per week.  CHRISTINA ROSA was a loyal

6  and committed employee, always going above and beyond of what was expected.  She took great

7  pride in her work.

8       17.    In or about the fall of 2022, CHRISTINA ROSA was subjected to an increasing

9  hostile work environment and harassment by her co-worker Senior Technical Product Manager

10 Shashaank Thota, who was verbally aggressive and demeaning to CHRISTINA ROSA and all the

11 female employees.   Shashaank Thota's behavior caused great stress among the team.

12 CHRISTINA ROSA filed a complaint with HR and management regarding Shashaank Thota's

13 abusive and discriminatory (Gender) behavior.  As a result of his behavior, CHRISTINA ROSA's

14 anxiety, migraines and stomach issues were exasperated, in addition to working 70-89 hours a

15 week.  As a result on or about October 4, 2022, CHRISTINA ROSA underwent a medical

16 endoscopy for severe stomach issues.

17      18.    On or about October 19, 2022, via Teams, Harish Wairagade SVP of Engineering

18 eCommerce leadership informed CHRISTINA ROSA that she was doing a great job and "keep it

19 up."  This note was also shared with HR and leadership to make them aware of CHRISTINA

20 ROSA's performance.

21      19.    On or about November 2, 2022, via email, CHRISTINA ROSA complained to WW

22 leadership that Senior Technical Product Manager Shashaank Thota was yelling and verbally

23 assaulting the WW team, specifically the women, during a team meeting.  CHRISTINA ROSA

24 complained that Shashaank Thota was aggressive, condescending, demeaning, and deriding to

25 CHRISTINA ROSA and the other staff and that this was unacceptable behavior and treatment.

26 Moreover, on or about November 2, 2022, CHRISTINA ROSA again complained to Carlette Bell

27 that Shashaank Thota's unacceptable behavior toward women was creating a hostile work and

28 harassing environment.

20.     On or about November 7, 2022, CHRISTINA ROSA met with Product Director of Rental Men's Wearhouse Dan Carpenter, Carlette Bell, and the WW Team, to revisit the scope of everyone's role.  On or about November 8 and 9, 2022, CHRISTINA ROSA met with Sr. Human Resources Business Partner Corporate Kristin Jackson to follow up on her complaints and share documents regarding Shashaank Thota's discriminatory and abusive behavior was that of creating a hostile work and harassing environment and putting the project in jeopardy.

21.     On or about November 17, 2022, CHRISTINA ROSA underwent another medical procedure and scan regarding her stomach/digestive issues attributed to the hostile work environment and leadership's neglect and inaction to her complaints.

22.     On or about December 7, 2022, CHRISTINA ROSA again complained to Kristin Jackson of HR regarding Shashaank Thota's behavior.  Specifically, CHRISTINA ROSA informed Kristin Jackson that there was no progress or improvement with Shashaank Thota, it was becoming very clear that CHRISTINA ROSA's complaints were not acted upon or taken seriously.

23.     On or about December 12, 2022, CHRISTINA ROSA provided a letter to SVP of Digital Suzanne Scott, cc to Carlette Bell, complaining about Shashaank Thota's behavioral issues.  Again, on or about December 21, 2022, CHRISTINA ROSA once again reached out to Suzanne Scott complaining that Shashaank Thota continued with the behavior described above. Ms. Scott was evasive with Plaintiff and in fact, Ms. Scott never planned the meeting. It was becoming clear to CHRISTINA ROSA that her complaints were not being investigated and instead her complaints went nowhere.

24.     On or about December 31, 2022, CHRISTINA ROSA underwent X-rays and MRI for her broken ankle and fractured fibula she sustained while on vacation in Mexico City.  Soon thereafter, CHRISTINA ROSA notified leadership, Carlette Bell, HR, and the WW team of her injury and that she would continue working remotely.

25.     On or about January 11, 2023, Carlette Bell questioned CHRISTINA ROSA's sick time relating to her broken ankle and fractured fibula.  From that date forward, Carlette Bell began an unsupportive working environment micromanaging her work.  CHRISTINA ROSA's workload

1   increased to an average of 80 hours per week.

2       26.     On or about February 22, 2023, CHRISTINA ROSA's physical health began to

3   further decline due to overwhelming demands of working 80 plus hours a week (required to work

4   only 40 hours flat in her non-exempt position) particularly with a misogynistic teammate,

5   Shashaank Thota.  CHRISTINA ROSA met with the Leave Department regarding her medical

6   condition, options, and concerns.  CHRISTINA ROSA suspected and began to experience that

7   Carlette Bell was in the process of phasing her out due to her disabilities and her complaints about

8   Shashaank Thota.  In retaliation, the micromanaging increased and her work performance, for the

9   first time was being questioned, in spite of the fact that she was successfully on track to scale the

10  Wedding Wingman  product, which she helped brainstorm, and was heavily supported by the C-

11  Suite,  to over 600 stores nationwide, which she successfully accomplished in the Spring of 2023.

12      27.     On or about February 27, 2023, CHRISTINA ROSA once again met with the

13  Leave Department regarding the final details for FMLA leave.  After memorializing her complaint

14  against Carlette Bell, it was agreed that CHRISTINA ROSA would work part-time (20 hours

15  weekly) in order to make traction on WW and deliver the MVP of the WW product and ensure

16  that the project remained on track and developed without any glitches or problems.  CHRISTINA

17  ROSA was committed to her job and proud of her work.

18      28.     On or about February 28, 2023, or March 1, 2023, as a courtesy call, CHRISTINA

19  ROSA called Carlette Bell to inform her that she was taking FMLA leave on a part-time basis

20  effective March 1, 2023.  In response, Carlette Bell began to yell at CHRISTINA ROSA "Why are

21  you scaling back your job hours?  Who is going to do your work?"  CHRISTINA ROSA replied

22  that she needed to attend to her health concerns.  Carlette Bell expressed that she was not pleased

23  or happy with CHRISTINA ROSA's decision, frustrated Carlette Bell abruptly and

24  inappropriately hung up on CHRISTINA ROSA.  CHRISTINA ROSA was left in awe and

25  anxious at the zero empathy for her health and wellbeing from her manager.

26      29.     On or about March 1, 2023, via email, CHRISTINA ROSA notified VP of Digital

27  Product Kelly Helthall and HR of the inappropriate and hostile call she had with Carlette Bell the

28  previous day regarding taking FMLA leave.

30.     On or about March 2, 2023, via email, CHRISTINA ROSA further notified the WW team of her intermittent FMLA leave and the scaling back of her work hours effective March 1, 2023.  On that same day, CHRISTINA ROSA again notified HR of Carlette Bell's blatant disregard for her disability, the aggressive, insensitive, sarcastic, and argumentative tone she was subjected to concerning taking FMLA leave.   Later that day, CHRISTINA ROSA again experienced very aggressive and 'fight' provoking IMs (via Teams) from Carlette Bell causing CHRISTINA ROSA to politely excuse herself from the IM thread and mentioned that Carlette Bell should reach out to the Leave Department with any details on her leave.

31.     By April 3, 2023, the MVP of Wedding Wingman had been delivered and scaled nationally to over 600 stores.   In appreciation for her commitment and great job, on or about April 14, 2023, Co-CEO Bob Hull and CEO Peter Sachse provided CHRISTINA ROSA with a FY22 (Fiscal Year 2022) Total Compensation Statement whereby her current annual salary of $156,764 was increased to $158,332 effective March 26, 2023, for being "a valued employee." CHRISTINA ROSA further received a Target 10% AIP of $31,353, boosted by a 200% BPP, resulting in a bonus of $31,353 and a Total Cash Compensation (Base + Increases + 2022 AIP) of $189,684.

32.     On or about May 11, 2023, after once again formalizing her complaint against Carlette Bell, CHRISTINA ROSA met with HR concerning FMLA and Carlette Bell's overall hostile and discriminatory treatment.  CHRISTINA ROSA requested that she be permitted to report directly to Kelly Helthall instead of Carlette Bell.  CHRISTINA ROSA was denied her request without any justifiable reason. It was clear to CHRISTINA ROSA that Carlette Bell had a blatant disregard and discriminatory attitude toward CHRISTINA ROSA's disability and FMLA request.

33.     On or about May 18, 2023, Kristin Jackson displayed her lack of effort to empathize, cooperate, or have any concerns for what was going to happen to CHRISTINA ROSA's job.  CHRISTINA ROSA stressed that she felt she was going to be phased out and terminated due to her disability which was exacerbated by the hostile work environment.  There was no clear direction from Kristin Jackson regarding Carlette Bell and no assurance of job

1  security.

2          34.    On or about July 13, 2023, via email, CHRISTINA ROSA inquired of Carlette Bell

3  and Kristin Jackson what it would be like upon her return to full time (from 20 hours to 40 hours a

4  week) from FMLA, ending on August 8, 2023.  Despite this inquiry, CHRISTINA ROSA was not

5  provided with any return-to-full time work details which became unsettling and concerning to her.

6          35.    On August 4, 2023, Ms. Rosa underwent an MRI on her brain due excessive and

7  persistent migraines due to the stress of her employment, long hours  and hostile work

8  environment. On or about August 8, 2023, upon returning to full time, Carlette Bell began overtly

9  to display her unkindness, lack of compassion, and lack of empathy toward CHRISTINA ROSA

10  and failed to provide direction for her career path.  The discrimination and harassment based on

11  CHRISTINA ROSA's disability and leave and retaliation for going to HR was evident.  This

12  behavior heightened and aggravated CHRISTINA ROSA's anxiety and PTSD.

13          36.    On or about August 11, 2023, Carlette Bell continued and persisted with

14  unreasonable nitpicking, finding fault, and micromanaging CHRISTINA ROSA, thereby creating

15  a paper trail and list of items to discuss on the next weekly one-on-one meeting between the two.

16  It was clear to CHRISTINA ROSA that she was being discriminated against for her disabilities

17  and retaliated against for filing complaint of Carlette Bell and Shashaank Thota.  Carlette Bell was

18  aware of CHRISTINA ROSA's complaints against her and her request to change manager, which

19  TAILORED BRANDS ignored.

20          37.    On or about August 30, 2023, CHRISTINA ROSA returned to full time, due to the

21  fact that her FMLA had expired.  CHRISTINA ROSA needed her job and was relying on

22  TAILORED BRANDS accommodating a 40-hour a week work week.  CHRISTINA ROSA

23  abruptly was thrown back into an 80-hour work week, despite her request for a 40 hour a week

24  work schedule and her medical mental condition caused by Carlette Bell and TAILORED

25  BRANDS.  At this time, Ms. Rosa reached out to Ms. Helthall and asked if they would resume

26  their regular meetings, as was the norm with the rest of the Product Team.  Ms. Helthall suggested

27  once a month, as opposed to once a week like the rest of the team.  Ms. Rosa began to feet as

28  though she was being treated differently based as a result of her medical issues.

38.     On or about September 1, 2023, CHRISTINA ROSA underwent a previously scheduled colonoscopy due to extreme digestive IBS issues caused by stress and the hostile work environment caused by her employer.

39.     On or about September 25, 2023, CHRISTINA ROSA requested full-time medical leave of absence with a return date in February 2024 based on her declining health and spike in anxiety due to TAILORED BRANDS and their complete disregard of CHRISTINA ROSA's requests for reasonable accommodation and complaints.

40.     On or about January 16, 2024, via email, CHRISTINA ROSA notified Leave of Absence Manager Amanda Post with the Leave Department that she sent her a return-to-work note – cleared to return to work full time remotely with a managerial change request from her doctor with a start date of 2/19/2024.  For fear of further discrimination, harassment and retaliation, CHRISTINA ROSA requested not to work with Carlette Bell.  The Leave Department informed CHRISTINA ROSA that her requests would continue to be reviewed by Carlette Bell because she was her manager, despite the fact that CHRISTINA ROSA was again requesting a new manager.

41.     On or about between January 31, 2024, and February 16, 2024, given the toxicity of being regularly harassed, denigrated, and derided, CHRISTINA ROSA simply requested a managerial change.  At that time, CHRISTINA ROSA provided her treating physician's note to the Leave Department and Kristin Jackson supporting the request for managerial change prior to her return to work and a 40-hour work week.   HR replied that no conversations for accommodation would occur until CHRISTINA ROSA returned to work because she was on medical leave.

42.     On or about February 16, 2024, CHRISTINA ROSA's treating physician issued another script notifying TAILORED BRANDS that CHRISTINA ROSA has been evaluated for work accommodation and may resume her fulltime job responsibilities starting on February 19, 2024 and that it would be beneficial to CHRISTINA ROSA to switch managers within the Product Department.

43.     On or about February 19, 2024, CHRISTINA ROSA returned to work remotely. CHRISTINA ROSA's very first meeting of the day was with Carlette Bell, who was

knowledgeable of all return accommodation requests (inclusive of multiple manager change requests). During this meeting with Carlette Bell, CHRISTINA ROSA was provided with a written "Return to Work – 30 Day Plan," an unattainable and unrealistic return to work plan, which CHRISTINA ROSA stated felt very much like a 'PIP' (Performance Improvement Plan) to Carlette Bell. CHRISTINA ROSA was further informed that her major responsibilities would be that of Product Lead for the JAB (Jos. A. Bank) Squad. After this meeting, CHRISTINA ROSA had met with HR (which should have been her first meeting of the day). During this call, CHRISTINA ROSA reiterated a change of management request and that she felt retaliated against by Carlette Bell since all return-to-work requests were viewed by Carlette Bell. HR instructed CHRISTINA ROSA to have a discussion with Carlette Bell and "try to make it work."

44. On or about February 22, 2024, during a meeting with Carlette Bell to smooth things over with her and address how CHRISTINA ROSA felt and what she experienced from her management, Carlette Bell's response and tone was nothing short of rude, cold, and sarcastic. No display of managerial etiquette. Despite this, CHRISTINA ROSA continued to push forward and ask that the two of them to reach an "agreement" to "make it work." CHRISTINA ROSA was great at her job and needed her job, yet Carlette Bell was setting her up to fail.

45. On or about April 3, 2024, CHRISTINA ROSA was seen by her treating physician and was issued a script with the restriction of 40 hours per week maximum; work remotely from her home; resume regular product management role; and would benefit from a change in manager from a mental health standpoint.

46. On or about April 10, 2024, CEO Peter Sachse provided CHRISTINA ROSA with a FY23 (Fiscal Year 2023) Compensation Statement whereby her current annual salary of $158,332 was increased to $161,498 effective March 24, 2024, for being "a valued employee." CHRISTINA ROSA further received a Win Together Bonus (Since Company target was not met) of $5,067 for a Total Cash Compensation (Base + Win Together Bonus Incentive) of $166,565. This is further evidence of CHRISTINA ROSA's exemplary work and work ethic, yet HR and her manager were clearly setting her up for failure.

47. On or about April 19, 2024, CHRISTINA ROSA requested a "guided discussion"

1   with Carlette Bell and Kristin Jackson on how she and Carlette Bell could work better together

2   since CHRISTINA ROSA noticed no positive change or effort from Carlette Bell on their original

3   agreement to "make it work" from their 2/22/24 meeting.

4       48.    In the morning of on or about May 1, 2024, CHRISTINA ROSA was once again

5   seen by her treating physician who issued a script that CHRISTINA ROSA needs a managerial

6   change and should be limited to 40 hours of work per week, due to her underlying medical

7   condition(s) has/have been negatively affected by her current work environment and managerial

8   oversight.    TAILORED BRANDS was ignoring her accommodations.    Later that afternoon

9   CHRISTINA ROSA attended a meeting scheduled by Carlette Bell and HR.    This meeting turned

10  into a 30-day PIP meeting whereby Carlette Bell advised CHRISTINA ROSA that, "We will meet

11  each week to review your performance for that week and discuss what went well and areas of

12  improvement. I will then be following up with an email after each discussion."    Immediately after

13  this meeting, CHRISTINA ROSA attempted to communicate with VP of Digital Product, Kelly

14  Helthall, via email, to discuss the ongoing issues she was experiencing and her shock of being

15  placed on a PIP.    However, Kelly Helthall declined CHRISTINA ROSA's meeting request and

16  plea for help.

17      49.    On or about May 6, 2024, CHRISTINA ROSA experienced a prolonged migraine

18  from the stress of being placed on a PIP and HR and leadership not accommodating her requests.

19  Thus, CHRISTINA ROSA's treating physician issued another script taking her off work until May

20  13, 2024.

21      50.    On or about May 14, 2024, via email, CHRISTINA ROSA expressed to Kristin

22  Jackson that she was quite disappointed how TAILORED BRANDS did not address her concerns

23  and displayed a lack of investigation into her many complaints (spanning over a year).    That

24  having to revisit and reiterate all that she has shared with HR and leadership has only perpetuated

25  and triggered her anxiety and PTSD.    Moreover, she further expressed that she felt set up to fail

26  right from the beginning of her return to work.    The breadth, scope, and volume of the work

27  assigned to her, to be completed during her first month back, was a blatant set up for failure.    Yet,

28  CHRISTINA ROSA jumped back in and immediately began working 70 plus hours a week upon

1  her return (weekends included) and delivered 100% for each of JAB's sprint releases.  These

2  concerns were also shared with Carlette Bell, that the workload was unattainable within the set

3  time-constraints.  CHRISTINA ROSA then provided a history of her many attempts addressing

4  her managerial concerns and multiple requests for a change in manager.  With all the efforts and

5  medically backed requests, nothing changed.  To be now placed on a PIP, just two weeks after her

6  last attempt to do her part in figuring out how to maintain a successful work relationship and

7  productive work output (the 'guided discussion') was blatant retaliation for complaining and pure

8  discrimination against her disabilities and medical leaves.

9        51.    On or about May 17, 2024, the Leave Department scheduled and met with

10  CHRISTINA ROSA for a meeting labeled "ADA Interactive Discussion."  As a result of the

11  meeting, CHRISTINA ROSA was placed on (forced) medical leave without her consent.

12        52.    On or about May 20, 2024, Kristin Jackson replied, "We have concluded looking

13  into your concerns about your supervisor and our Employee Relations team will follow up in

14  writing by the end of the week.  Your role is not being eliminated and we would like you back in

15  the role as soon as you're able."

16        53.    On June 4, 2024 CHRISTINA ROSA emailed MetLife extending her medical leave

17  through July 7, 2024, then again on June 24, 2024, CHRISTINA ROSA again emailed MetLife

18  her medical leave extension beginning July 7, 2024, through September 7, 2024.

19        54     Between on or about July 8, 2024, and August 25, 2024, CHRISTINA ROSA was

20  on approved continuous leave per MetLife.

21        55.    Between on or about August 26, 2024, and November 7, 2024, CHRISTINA

22  ROSA was on approved leave per MetLife.

23        56.    On or about August 30, 2024, CHRISTINA ROSA emailed MetLife her medical

24  leave extension beginning September 7, 2024, through November 7, 2024.

25        57.    On or about October 29, 2024, CHRISTINA ROSA's treating physician issued a

26  script that **CHRISTINA ROSA needs a leave from work from November 7, 2024 to January

27  7, 2025**.  Said script was directly provided to MetLife.

28        58.    On or about November 11, 2024, CHRISTINA ROSA received an overnight FedEx

letter from TAILORED BRANDS stating, "We have been notified by our leave of absence claims administrator, MetLife, that you are able to return to an active status, but we have been unsuccessful in contacting you to coordinate your return. Please review the following requirements and **actions you need to take within 7 days from the date of this letter**: . . . **Failure to submit your Health Certification form, contact the Leaves Department to coordinate your return, or contact MetLife, will result in your employment being terminated effective 11/18/2024**."

59.    On or about November 19, 2024, CHRISTINA ROSA received an overnight FedEx letter from TAILORED BRANDS stating, "We have been notified by our leave of absence claims administrator, MetLife, that you are able to return to an active status, but we have been unsuccessful in contacting you to coordinate your return. Please review the following requirements and **actions you need to take within 5 days from the date of this letter**: . . . **Failure to submit your Health Certification form, contact the Leaves Department to coordinate your return, or contact MetLife, will result in your employment being terminated effective 11/24/2024**."

60.    On or about November 23, 2024, CHRISTINA ROSA called the Leave Department and left a voicemail message stating, to stop sending her threatening and harassing letters, and that MetLife has all the medical forms needed to support her medical leave.  This phone call was witnessed.

61.    On or about December 10, 2024, CHRISTINA ROSA received an overnight FedEx letter from TAILORED BRANDS  stating, "We have been notified by our leave of absence claims administrator, MetLife, that you are able to return to an active status, but we have been unsuccessful in contacting you to coordinate your return. Please review the following requirements and **actions you need to take within 5 days from the date of this letter**: . . . **Failure to submit your Health Certification form, contact the Leaves Department to coordinate your return, or contact MetLife, will result in your employment being terminated effective 12/15/2024**."    Again, Ms. Rosa had already submitted the necessary paperwork to MetLife.  At all times, Ms. Rosa complaint in submitting the proper documentation to MetLife.

62.    On or about December 18, 2024, CHRISTINA ROSA received a "Notice of Separation" from Tailored Shared Services, LLC, summarily terminating her employment, effective December 16, 2024, without any stated reasons other than "DID NOT RETURN FROM MEDICAL LEAVE OF ABSENCE." Despite being off work on approved medical leave issued by her treating physicians, CHRISTINA ROSA was summarily terminated. CHRISTINA ROSA was compelled to take medical leave on a full-time basis to heal and decompress from the hostile work environment caused by TAILORED BRANDS. Between the time that CHRISTINA ROSA was on medical leave and her return date, CHRISTINA ROSA made countless attempts to discuss the ongoing issues concerning mistreatment and requests for reasonable accommodation with HR, her former manager Kelly Helthall, and the Leave Department. However, CHRISTINA ROSA was summarily and wrongfully terminated while on an approved leave.

**FIRST CAUSE OF ACTION**
**DISCRIMINATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON PHYSICAL AND/OR MENTAL DISABILITY**

63.    Plaintiff realleges and incorporate by reference paragraphs 1-62, inclusive, as though fully set forth herein.

64.    This is an action at law to recover damages for discrimination and unlawful employment practices based on physical and/or mental disability (PTSD and chronic anxiety, IBS, and major depressive disorder). Jurisdiction in this Court is invoked pursuant to California Government Code §§ 12900, 12920, 12921, 12926, 12926.1, 12940, and 12965(b).

65.    Plaintiff alleges that she is a person protected by the California Fair Employment and Housing Act and Government Code §§ 12900, 12920, 12921, 12926, 12940, and 12965(b); *Barnett v. U.S. Air., Inc*. 228 F.3d 1105 (9th Cir. 2000), [U.S. cite]; *Prilliman v. United Air Lines, Inc*. (1997) 53 Cal.App.4th 935, 950; *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245; *Humphrey v. Memorial Hospitals Assn*. (9th Cir. 2001) 239 F.3d 1128; and *Spitzer v. The Good Guys* (2000) 80 Cal.App.4th 1376, in that Plaintiff objected and opposed the discrimination as described in this Complaint.

66.    Plaintiff alleges that Defendant TAILORED BRANDS is not exempt by any local, state, or federal statutes. Plaintiff alleges that this includes the affirmative defense of Bona Fide

1  Occupational Qualification, etc.

2      67.    Plaintiff alleges that Defendant TAILORED BRANDS is an employer regularly
3  employing five or more persons within the meaning of Government Code § 12926.

4      68.    Defendant TAILORED BRANDS has ratified the discrimination against Plaintiff
5  due to her physical and mental disability and by failing to afford and provide her with equal
6  employment opportunities and the terms and conditions of employment that must be provided to
7  eligible or qualified employees.  Defendant ratified the acts of its employees and agents by
8  omission to act.

9      69.    Plaintiff believes that the available evidence, and such evidence as she will develop
10  through discovery and present at trial herein, indicates and will indicate that Defendant
11  discriminated and continues to discriminate against Plaintiff and other employees whom have a
12  physical and/or mental disability (PTSD and chronic anxiety, IBS, and major depressive disorder).
13  Plaintiff is uncertain if the form of discrimination is prevalent throughout TAILORED BRANDS,
14  or if it is an isolated "ad hoc" situation adversely affecting and impacting a protected class and
15  group of which Plaintiff is a member.  Because of the uncertainty, an individual member of the
16  affected group may bring an individual claim based on either theory.

17      70.    Notwithstanding the fact that Plaintiff was and is able to perform the essential
18  functions of her job duties as a Sr. Product Manager, which she had been performing or similar
19  roles without difficulty, Plaintiff alleges that the adverse action by Defendant TAILORED
20  BRANDS was pretextual designed to avoid contending with her health issues.    Defendant
21  TAILORED BRANDS instead provided Plaintiff with pretextual excuses for her separation and
22  adverse action given that Plaintiff invariably received favorable praises and accolades prior to the
23  adverse action alleged above.  Plaintiff believes that she was discriminated against simply due to
24  her physical and/or mental disability (PTSD and chronic anxiety, IBS, and major depressive
25  disorder).

26      71.    As a proximate result of the ongoing discrimination by Defendant TAILORED
27  BRANDS, Plaintiff was held up to great ridicule, all because of her physical and/or mental
28  disabilities described above.  Plaintiff alleges that she was denied the opportunity to be treated

1  equally and fairly and employed by Defendant in the position she held, on account of bias,

2  prejudice and differential treatment against Plaintiff.

3      72.    Plaintiff was further held up to great ridicule and embarrassment with fellow

4  workers, friends, members of the community and family and suffered emotional distress because

5  Defendant demonstrated to Plaintiff that it would not recognize her physical and/or mental

6  disabilities.  Defendants further acted intentionally and unreasonably with the recognition that its

7  conduct was likely to result in damages through mental distress.

8      73.    Plaintiff made numerous good faith reasonable attempts to discuss with

9  Defendant's supervisors, officials, and personnel management in order to retain her employment

10  free of discrimination and seek redress for the discrimination and other illegal conduct practiced

11  upon Plaintiff by Defendant TAILORED BRANDS, but the officials and personnel management

12  were not responsive to her petitions.  The officials and personnel management declined to censure,

13  criticize, terminate, suspend, reverse any decisions, or otherwise take any action even after having

14  been informed of their conduct.   Therefore, Plaintiff was forced to complain against the

15  Defendants before the California Civil Rights Department.

16      74.    By reason of the wrongful acts of the Defendant TAILORED BRANDS, as

17  hereinabove alleged, Plaintiff will be required to and will employ physicians, surgeons,

18  psychiatrists, and healthcare providers to examine, treat and care for her and will incur additional

19  medical expenses in an amount to be proven at the time of trial.

20      75.    As a further proximate result of the conduct of the Defendant TAILORED

21  BRANDS, Plaintiff suffered great emotional distress.  Plaintiff is informed and believes and

22  thereon alleges that the injuries are not compensable under the Workers' Compensation Act and

23  are not a risk or condition of her employment.  Because of the cold, callous and indifferent manner

24  in which the adverse action against Plaintiff was carried out; the deliberate and intentional refusal

25  to follow recognized local and state statutes; and Defendant's encouragement and condoning of

26  the unlawful practices, Plaintiff became distressed and upset and was caused to experience severe

27  emotional suffering and seeks damages for such mental and emotional distress in a sum according

28  to proof at time of trial.

76.     By reason of the aforementioned acts, Plaintiff was prevented from attending to her usual occupation for a period in the future, which amount is not readily ascertainable and will thereby sustain further loss of earnings and benefits.  Plaintiff further maintains that she will have difficulty finding comparable employment in her field and industry due to her blemished record that she was involuntarily separated.  Plaintiff will therefore request leave of the court to amend this Complaint to state the amount of all such damages when they have been ascertained or upon proof at the time of trial.

77.     In bringing this action, Plaintiff has had to retain the services of the Law Offices of Joseph L. Alioto and Angela Alioto.  Government Code § 12965(b) provides that the court may award reasonable attorney's fees and Plaintiff requests such fees to be ordered at the time of arbitration, trial or hearing thereafter.

78.     In doing the acts set forth above, Defendant knew that the systematic campaign and scheme to target Plaintiff based on the discriminatory protected basis was unlawful, illegal, malicious, without justification, unauthorized, unprivileged, wanton, despicable, with reckless disregard, oppressive, and with a conscious disregard for Plaintiff's Civil Rights motivated by pretextual reasons stated above, in violation of Plaintiff's fundamental Civil Rights.  Defendant acted with malice because Defendant had no reasonable belief that its behavior was legitimate.  Plaintiff's demand thereby warrants the assessment of punitive damages in a sum according to proof.  Plaintiff will pray leave of the Court to amend this Complaint to state such amounts at the time they are ascertained, or according to proof at trial.

**SECOND CAUSE OF ACTION**
**DISCRIMINATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON**
**FAILURE TO REASONABLY ACCOMMODATE IN GOOD FAITH**

79.     Plaintiff reallege and incorporate by reference paragraphs 1-62, inclusive, as though fully set forth herein.

80.     This is an action at law to recover damages for discrimination and unlawful employment practices based on denial of reasonable accommodation regarding physical and/or mental disabilities (PTSD and chronic anxiety, IBS, and major depressive disorder).  Jurisdiction in this Court is invoked pursuant to California Government Code §§ 12900, 12920, 12921,

1  12926(a), 12940, and 12965(b).

2       81.    Plaintiff alleges that she is a person protected by the California Fair Employment

3  and Housing Act and Government Code §§ 12900, 12920, 12921, 12926, 12940, and 12965(b);

4  *Barnett v. U.S. Air., Inc.* 228 F.3d 1105 (9th Cir. 2000), [U.S. cite]; *Prilliman v. United Air Lines,*

5  *Inc.* (1997) 53 Cal.App.4th 935, 950; *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245;

6  *Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128; and *Spitzer v. The Good*

7  *Guys* (2000) 80 Cal.App.4th 1376, in that Plaintiff was denied reasonable accommodation as

8  described in this Complaint.

9       82.    Plaintiff alleges that Defendant TAILORED BRANDS is not exempt by any local,

10  state, or federal statutes.  Plaintiff alleges that this includes the affirmative defense of Bona Fide

11  Occupational Qualification, etc.

12       83.    Plaintiff alleges that Defendant TAILORED BRANDS is an employer regularly

13  employing five or more persons within the meaning of Government Code § 12926.

14       84.    Plaintiff believes that the available evidence, and such evidence as she will develop

15  through discovery and present at trial herein, indicates and will indicate that Defendants failed and

16  refused to reasonably accommodate and continues to fail and refuse to reasonably accommodate

17  Plaintiff's physical and/or mental disabilities (PTSD and chronic anxiety, IBS, and major

18  depressive disorder).  Plaintiff is uncertain if the form of discrimination is prevalent throughout

19  Defendant TAILORED BRANDS, or if it is an isolated "ad hoc" situation adversely affecting and

20  impacting a protected class and group of which Plaintiff is a member.  Because of the uncertainty,

21  an individual member of the affected group may bring an individual claim based on either theory.

22       85.    Notwithstanding the fact that Plaintiff was and is able to perform the essential

23  functions of her job duties as a Sr. Product Manager, which she had been performing or similar

24  roles without difficulty, Plaintiff alleges that the adverse action by Defendant TAILORED

25  BRANDS was pretextual designed to avoid contending with her health issues.  Defendant

26  TAILORED BRANDS instead provided Plaintiff with pretextual excuses for her separation and

27  adverse action given that Plaintiff invariably received favorable praises and accolades prior to the

28  adverse action alleged above.  Plaintiff believes that Defendants failed and refused to provide

1    reasonable accommodation associated with Plaintiff's physical and/or mental disability (PTSD and
2    chronic anxiety, IBS, and major depressive disorder) notwithstanding the fact that she could
3    continue working at Defendant without causing Defendant any unnecessary hardship.  Plaintiff
4    alleges that the failure and refusal to reasonably accommodate by Defendants was pretextual in an
5    effort to avoid complying with its statutory obligation.

6        86.    As a proximate result of the failure and refusal to reasonably accommodate by
7    Defendant TAILORED BRANDS, Plaintiff was held up to great ridicule, all because of her
8    physical and/or mental disability described above.  Plaintiff alleges that she was denied the
9    opportunity to be treated equally and fairly and employed by Defendant in the position she held,
10   on account of bias, prejudice and differential treatment against Plaintiff.

11       87.    Plaintiff was further held up to great ridicule and embarrassment with fellow
12   workers, friends, members of the community and family and suffered emotional distress because
13   Defendant demonstrated to Plaintiff that it would not recognize her request for reasonable
14   accommodation given her physical and/or mental disability.  The Defendant further acted
15   intentionally and unreasonably with the recognition that its conduct was likely to result in
16   damages through mental distress.

17       88.    Plaintiff made numerous good faith reasonable attempts to discuss with
18   Defendant's supervisors, officials, and personnel management in order to retain her employment
19   free of discrimination and seek redress for the discrimination and other illegal conduct practiced
20   upon Plaintiff by Defendant TAILORED BRANDS, but the officials and personnel management
21   were not responsive to her petitions.  The officials and personnel management declined to censure,
22   criticize, terminate, suspend, reverse any decisions, or otherwise take any action even after having
23   been informed of their conduct.  Therefore, Plaintiff was forced to complain against Defendant
24   before the California Civil Rights Department.

25       89.    By reason of the wrongful acts of the Defendant TAILORED BRANDS, as
26   hereinabove alleged, Plaintiff will be required to and will employ physicians, surgeons,
27   psychiatrists, and healthcare providers to examine, treat and care for her and will incur additional
28   medical expenses in an amount to be proven at the time of trial.

90.     As a further proximate result of the conduct of the Defendant TAILORED BRANDS, Plaintiff suffered great emotional distress.  Plaintiff is informed and believes and thereon alleges that the injuries are not compensable under the Workers' Compensation Act and are not a risk or condition of her employment.  Because of the cold, callous and indifferent manner in which the adverse action against Plaintiff was carried out; the deliberate and intentional refusal to follow recognized local and state statutes; Defendants encouraging the unlawful practices, Plaintiff became distressed and upset and was caused to experience severe emotional suffering and seeks damages for such mental and emotional distress in a sum according to proof at time of trial.

91.     Because of the aforementioned acts, Plaintiff was prevented from attending to her usual occupation for a period in the future, which amount is not readily ascertainable and will thereby sustain further loss of earnings and benefits.  Plaintiff further maintains that she will have difficulty finding comparable employment in her field and industry due to her blemished record that she was involuntarily separated.  Plaintiff will therefore request leave of the court to amend this Complaint to state the amount of all such damages when they have been ascertained or upon proof at the time of trial.

92.     In bringing this action, Plaintiff has had to retain the services of the Law Offices of Joseph L. Alioto and Angela Alioto.  Government Code § 12965(b) provides that the court may award reasonable attorney's fees and Plaintiff requests such fees to be ordered at the time of arbitration, trial or hearing thereafter.

93.     In doing the acts set forth above, Defendant knew that the systematic campaign and scheme to target Plaintiff based on the discriminatory protected basis was unlawful, illegal, malicious, without justification, unauthorized, unprivileged, wanton, despicable, with reckless disregard, oppressive, and with a conscious disregard for Plaintiff's Civil Rights motivated by pretextual reasons stated above, in violation of Plaintiff's fundamental Civil Rights.  Defendant acted with malice because Defendant had no reasonable belief that its behavior was legitimate.  Plaintiff's demand thereby warrants the assessment of punitive damages in a sum according to proof.  Plaintiff will pray leave of the Court to amend this Complaint to state such amounts at the time they are ascertained, or according to proof at trial.

**THIRD CAUSE OF ACTION**
**DISCRIMINATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON**
**FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN GOOD FAITH**

94.     Plaintiff reallege and incorporate by reference paragraphs 1-62, inclusive, as though fully set forth herein.

95.     This is action at law to recover damages for discrimination and unlawful employment practices based on failure and refusal to engage in the interactive process in good faith in connection with Plaintiff's physical and/or mental disability (PTSD and chronic anxiety, IBS, and major depressive disorder).  Jurisdiction in this Court is invoked pursuant to California Government Code §§ 12900, 12920, 12921, 12926(a), 12940, and 12965(b).

96.     Plaintiff alleges that she is a person protected by the California Fair Employment and Housing Act and Government Code §§ 12900, 12920, 12921, 12926, 12940, and 12965(b); *Barnett v. U.S. Air., Inc*. 228 F.3d 1105 (9th Cir. 2000), [U.S. cite]; *Prilliman v. United Air Lines, Inc*. (1997) 53 Cal.App.4th 935, 950; *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245; *Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128; and *Spitzer v. The Good Guys* (2000) 80 Cal.App.4th 1376, in that Defendant failed and refused to engage in the interactive process in good faith in connection with Plaintiff's physical and/or mental disability as in this Complaint.

97.     Plaintiff alleges that Defendant is not exempt by any local, state, or federal statutes. Plaintiff alleges that this includes the affirmative defense of Bona Fide Occupational Qualification, etc.

98.     Plaintiff alleges that Defendant is an employer regularly employing five or more persons within the meaning of Government Code § 12926.

99.     Plaintiff believes that the available evidence, and such evidence as she will develop through discovery and present at trial herein, indicates and will indicate that Defendant failed and refused to engage in the interactive process in good faith with Plaintiff in connection with Plaintiff's physical and/or mental disability (PTSD and chronic anxiety, IBS, and major depressive disorder).  Plaintiff is uncertain if the form of discrimination is prevalent throughout TAILORED BRANDS, or if it is an isolated "ad hoc" situation adversely affecting and impacting a protected

1   class and group of which Plaintiff is a member.  Because of the uncertainty, an individual member

2   of the affected group may bring an individual claim based on either theory.

3       100.    Notwithstanding the fact that Plaintiff was and is able to perform the essential

4   functions of her job duties as a Sr. Product Manager, which she had been performing this position

5   or similar roles without difficulty, Plaintiff alleges that the adverse action by Defendant

6   TAILORED BRANDS was pretextual designed to avoid contending with her health issues.

7   Defendant TAILORED BRANDS instead provided Plaintiff with pretextual excuses for her

8   separation and adverse action given that Plaintiff invariably received favorable praises and

9   accolades prior to the adverse action alleged above.   Plaintiff's request for accommodation

10  triggered Defendant's obligation for an interactive process with Plaintiff.  Plaintiff believes that

11  Defendants failed and refused to engage in the interactive process in good faith in connection with

12  Plaintiff's physical and/or mental disability (PTSD and chronic anxiety, IBS, and major depressive

13  disorder) notwithstanding the fact that she could continue working for Defendant without causing

14  Defendant any unnecessary hardship.  Plaintiff alleges that the failure and refusal to reasonably

15  engage in the interactive process in good faith by Defendant TAILORED BRANDS was pretextual in

16  an effort to avoid complying with its obligation.  The fact that the Company failed and refused to sit

17  down with her in good faith and engage in the interactive process and discuss viable options to

18  meet her disability challenges, **is an automatic violation per se of the FEHA**. (see Government

19  Code section 12940(n); *Nadaf-Rahrov v.  Neiman Marcus* (2008) 166 Cal.App.4th 952, 981-987;

20  *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 950; *Jensen v. Wells Fargo Bank*

21  (2000) 85 Cal.App.4th 245; *Humphrey v.  Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128;

22  and *Spitzer v. The Good Guys* (2000) 80 Cal.App.4th 1376).  CHRISTINA ROSA believes and

23  alleges, though she repeatedly reached out to management to ameliorate the unlawful treatment,

24  TAILORED BRANDS failed and refused to engage in the interactive process in good faith

25  personally with her to consider her requests for reasonable accommodations and other options

26  despite her repeated requests.  Had TAILORED BRANDS made the efforts and engaged in the

27  interactive process, CHRISTINA ROSA was prepared, ready, and willing to discuss and offer the

28  option of returning to work on a part time basis until her health improved; or perhaps continue to

1    work remotely from home as needed and like was hired to do; or have the flexibility of changing

2    her work schedule so that she could attend medical appointments; or work on a consulting basis so

3    that she could continue to contribute, etc.

4        101.    As a proximate result of the failure and refusal to reasonably engage in the

5    interactive process in good faith by Defendant TAILORED BRANDS, Plaintiff was held up to

6    great ridicule, all because of her physical and/or mental disability described above.  Plaintiff

7    alleges that she was denied the opportunity to be treated equally and fairly and employed by

8    Defendant in the position she held, on account of bias, prejudice and differential treatment against

9    Plaintiff.

10       102.    Plaintiff was further held up to great ridicule and embarrassment with fellow

11   workers, friends, members of the community and family and suffered emotional distress because

12   Defendants demonstrated to Plaintiff that it would not reasonably engage in the interactive process

13   in good faith with regard to her physical and/or mental disability.  The Defendant further acted

14   intentionally and unreasonably with the recognition that its conduct was likely to result in

15   damages through mental distress.

16       103.    Plaintiff made numerous good faith reasonable attempts to discuss with

17   Defendant's supervisors, officials, and personnel management in order to retain her employment

18   free of discrimination and seek redress for the discrimination and other illegal conduct practiced

19   upon Plaintiff by Defendant TAILORED BRANDS, but the officials and personnel management

20   were not responsive to her petitions.  The officials and personnel management declined to censure,

21   criticize, terminate, suspend, reverse any decisions, or otherwise take any action even after having

22   been informed of their conduct.  Therefore, Plaintiff was forced to complain against Defendants

23   before the California Civil Rights Department.

24       104.    By reason of the wrongful acts of the Defendant TAILORED BRANDS as

25   hereinabove alleged, Plaintiff will be required to and will employ physicians, surgeons,

26   psychiatrists, and healthcare providers to examine, treat and care for her and will incur additional

27   medical expenses in an amount to be proven at the time of trial.

28

105.    As a further proximate result of the conduct of the Defendant TAILORED BRANDS, Plaintiff suffered great emotional distress.  Plaintiff is informed and believes and thereon alleges that the injuries are not compensable under the Workers' Compensation Act and are not a risk or condition of her employment.  Because of the cold, callous and indifferent manner in which the adverse action against Plaintiff was carried out; the deliberate and intentional refusal to follow recognized local and state statutes; Defendant encouraging the unlawful practices, Plaintiff became distressed and upset and was caused to experience severe emotional suffering and seeks damages for such mental and emotional distress in a sum according to proof at time of trial.

106.    By reason of the aforementioned acts, Plaintiff was prevented from attending to her usual occupation for a period in the future, which amount is not readily ascertainable and will thereby sustain further loss of earnings and benefits.  Plaintiff further maintains that she will have difficulty finding comparable employment in her field and industry due to her blemished record that she was involuntarily separated.  Plaintiff will therefore request leave of the court to amend this Complaint to state the amount of all such damages when they have been ascertained or upon proof at the time of trial.

107.    In bringing this action, Plaintiff has had to retain the services of the Law Offices of Joseph L. Alioto and Angela Alioto.  Government Code § 12965(b) provides that the court may award reasonable attorney's fees and Plaintiff requests such fees to be ordered at the time of arbitration, trial or hearing thereafter.

108.    In doing the acts set forth above, Defendant knew that the systematic campaign and scheme to target Plaintiff based on the discriminatory protected basis was unlawful, illegal, malicious, without justification, unauthorized, unprivileged, wanton, despicable, with reckless disregard, oppressive, and with a conscious disregard for Plaintiff's Civil Rights motivated by pretextual reasons stated above, in violation of Plaintiff's fundamental Civil Rights.  Defendant acted with malice because Defendant had no reasonable belief that its behavior was legitimate. Plaintiff's demand thereby warrants the assessment of punitive damages in a sum according to proof.  Plaintiff will pray leave of the Court to amend this Complaint to state such amounts at the time they are ascertained, or according to proof at trial.

## FOURTH CAUSE OF ACTION
### RETALIATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON COMPLAINING AND REPORTING DISCRIMINATION AND UNFAIR TREATMENT

109.    Plaintiff reallege and incorporate by reference paragraphs 1-62, inclusive, as though fully set forth herein.

110.    This is action at law to recover damages for violation of statutes and unlawful employment practices.  Plaintiff alleges that she is a person protected by California laws, which protect employees from retaliation, reprisal, and adverse action for complaining, reporting, chronicling, and detailing her opposition of unfair treatment to upper management and individuals of authority.  Jurisdiction in this court is invoked pursuant to, including, but without limitation, California Government Code §§ 12900, et seq.; California Labor Code §§ 1102.5, et seq.; California Constitution Article I, § 8; *Hentzel v. Singer Co.* (1982) 138 Cal.App.3d 290; and *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028.  Specifically, an employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a person with authority over the employee, or to another employee who has authority to investigate, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.  California Labor Code § 1102.5 is a pivotal statute in protecting whistleblowers within the workplace, ensuring employees can report illegal activities (e.g., individuals within protected basis of the FEHA) without fear of retaliation.  This law fosters transparency and accountability by safeguarding individuals who disclose information they reasonably believe evidence a violation of state or federal laws.

111.    Defendant TAILORED BRANDS has retaliated against Plaintiff due to her complaints and reporting about discrimination, retaliation, and unfair treatment based on the stated facts alleged above and by failing to afford and provide her with equal employment opportunities and the terms and conditions of employment that must be provided to employees irrespective of complaints and reporting.

112.    Plaintiff alleges that the unfair treatment was pretextual and not based on legitimate business reasons.  Notwithstanding the fact that Plaintiff was and is able and competent to perform the functions and job duties as a Sr. Product Manager or comparable position, TAILORED BRANDS refused to continue with Plaintiff's employment simply due to her complaining and reporting about unfair and discriminatory treatment, and hostile working environment.  The excuses given by TAILORED BRANDS and its management concerning the reasons for terminating, was unlawful and retaliatory.

113.    As a proximate result of said retaliation by Defendant, Plaintiff was held up to great ridicule, all because of her complaints and reporting about discrimination and unfair treatment. Plaintiff alleges that she was denied the opportunity to be treated equally and fairly and employed by Defendant in the position she held, on account of bias, prejudice and differential treatment against Plaintiff.

114.    Plaintiff was further held up to great ridicule and embarrassment with fellow workers, friends, colleagues, members of the community and family and suffered emotional distress because Defendants demonstrated to Plaintiff that they would not recognize her complaints and reporting about discrimination, hostile working environment, and unfair treatment.  The Defendants further acted intentionally and unreasonably with the recognition that their conduct was likely to result in damages through mental distress.

115.    Plaintiff attempted numerous discussions with Defendant's executives, supervisors and officials in order to retain her employment free of retaliation and discrimination and seek redress for the discrimination and other illegal conduct practiced upon Plaintiff by Defendant, but said officials and/or administration personnel were not responsive to her petitions.  Instead, HR abdicated its role, responsibility, function, and position, and instructed CHRISTINA ROSA to have a discussion with Carlette Bell and "try to make it work."  Said officials, personnel management and others declined to censure, criticize, terminate, suspend, reverse any decisions, or otherwise take any action even after having been informed of their conduct.

116.    CHRISTINA ROSA vehemently believes that the basis to support her termination of employment is pretextual and motivated by her constant complaining discussed above.  CHRISTINA

ROSA is the epitome and emblematic of what a hardworking employee aspires to be in her position. CHRISTINA ROSA is a strong product leader with strategic vision, strong execution, to everything she does.  She further fostered a culture of collaboration and open communication, creating an environment where team members felt empowered to take ownership and responsibility of their work. CHRISTINA ROSA's leadership style allowed everyone to feel valued, heard, and motivated to do their best work and delivered optimal products and customer experiences.  CHRISTINA ROSA is highly skilled and accomplished at building and refining product processes to enhance efficiency and improve collaboration and communication with key stakeholders and partners.  CHRISTINA ROSA has been instrumental in team building for long-term success.  CHRISTINA ROSA was always available to provide guidance, advice, considerate and thoughtful feedback, and support. Team members always felt that she was approachable, skilled, and even referred to as 'sunshine' thereby creating an environment where they felt comfortable sharing thoughts, concepts, planning, and ideas. She was a loyal, high achieving and exemplary employee.

117.    By reason of the wrongful acts of the Defendant as hereinabove alleged, Plaintiff will be required to and will employ physicians and surgeons to examine, treat and care for her and will incur additional medical expenses in an amount to be proven at the time of trial.

118.    As a further proximate result of the conduct of the Defendant, Plaintiff suffered great emotional distress.  Plaintiff is informed and believes and thereon alleges that said injuries are not compensable under the Workers' Compensation Act and are not a risk or condition of her employment.  Because of the cold, callous and indifferent manner in which Plaintiff's separation and termination was carried out; the deliberate and intentional refusal to follow recognized local and state statutes; Defendant encouraging the unlawful practices, Plaintiff became distressed and upset and was caused to experience severe emotional suffering and seeks damages for such mental and emotional distress in a sum according to proof at time of trial.

119.    By reason of the aforementioned retaliatory acts, Plaintiff was denied opportunities and promotions for a period in the future, which amount is not readily ascertainable and will thereby sustain further loss of earnings.  Plaintiff further maintains that she will have difficulty finding comparable employment in her field and industry due to her blemished record that she was

1  involuntarily separated.  Plaintiff will therefore request leave of the court to amend this Complaint

2  to state the amount of all such damages when they have been ascertained or upon proof at the time

3  of trial.

4       120.  Labor Code § 1102.5 (f) provides, "In addition to other penalties, an employer that

5  is a corporation or limited liability company is liable for a civil penalty not exceeding ten thousand

6  dollars ($10,000) for each violation of this section."  Accordingly, Plaintiff will be seeking a

7  demand for civil penalties.

8       121.  In bringing this action, Plaintiff has had to retain the services of the Law Offices of

9  Joseph L. Alioto and Angela Alioto.  Government Code § 12965(b) and Labor Code § 1102.5 (j)

10  provide that the court may award reasonable attorney's fees and Plaintiff requests such fees to be

11  ordered at the time of arbitration, trial or hearing thereafter.

12       122.  In doing the acts set forth above, Defendant knew that the conduct was willful,

13  wanton, despicable, malicious and cruel in conscious disregard of Plaintiff's rights to be free from

14  retaliation, reprisal and violations of public policy.  Defendant coddled and protected employees

15  known by it to be a misogynistic teammate, Shashaank Thota.  Defendant further protected Carlette

16  Bell whom had a blatant disregard and discriminatory attitude toward CHRISTINA ROSA's

17  disability and FMLA request.  Plaintiff's demand thereby warrants the assessment of punitive

18  damages against Defendant TAILORED BRANDS in a sum according to proof.  Plaintiff will pray

19  leave of the Court to amend this Complaint to state such amounts at the time they are ascertained, or

20  according to proof at trial.

21

22  **FIFTH CAUSE OF ACTION**
   **DISCRIMINATION BASED ON VIOLATION OF CFRA LEAVE**

23       123.  Plaintiff realleges and incorporates by reference paragraphs 1-62, inclusive, as

24  though fully set forth herein.

25       124.  This is an action at law to recover damages for discrimination and unlawful

26  employment practices on the basis of violations of the California Family Rights Act ("CFRA").

27  Jurisdiction in this Court is invoked pursuant to California Government Code §§ 12900, 12920,

28  12921, 12926, 12926.1, 12940, 12945.2 and 12965(b); and Cal. Code of Reg. § 7297.10.

125.    Plaintiff alleges that Defendant TAILORED BRANDS is not exempt by any local, state or federal statutes.    Plaintiff alleges that this includes, but is not limited to, Bona Fide Occupational Qualification, etc.    Plaintiff further alleges that Defendant TAILORED BRANDS regularly employing fifty or more persons within the definition of § 12945.2 of the California Government Code.

126.    Plaintiff alleges that she is a person protected by the California Fair Employment and Housing Act and Government Code §§ 12900, 12920, 12921, 12926, 12926.1, 12940, 12945.2 and 12965(b); and Cal. Code of Reg. § 7297.10, in that Plaintiff has worked more than 1,250 hours in the preceding twelve months and her need for medical leave of absence was due to PTSD and chronic anxiety, IBS, and major depressive disorder as alleged above.    Defendant TAILORED BRANDS discriminated against Plaintiff due to being denied or being harassed regarding medical leave of absence as it relates to her PTSD and chronic anxiety, IBS, and major depressive disorder as alleged above.

127.    Plaintiff believes that the evidence adduced in the investigation, and such evidence as she will develop through discovery and present at trial herein, indicates and will indicate that Defendant TAILORED BRANDS discriminated and continues to discriminate against Plaintiff and other employees whom elect to request family care leave for themselves.    Plaintiff is of the information and belief, however, uncertain if the form of discrimination, disparate impact and/or desperate treatment, is prevalent throughout TAILORED BRANDS, or if it is an isolated "ad hoc" situation adversely affecting and impacting a protected class and group of which Plaintiff is a member.    Because of the uncertainty, an individual member of the affected group may bring an individual claim based on these theories.

128.    As a proximate result of the interference with her substantive protections to take medical leave, Plaintiff was held up to great ridicule all because of her request for leave described above.    Plaintiff alleges that she was denied the opportunity to be treated equally and fairly and employed by Defendant in the position she held, on account of bias, prejudice and differential treatment against Plaintiff.

129.    Plaintiff was further held up to great ridicule and embarrassment with fellow workers, friends, members of the community and family and suffered emotional distress because Defendant TAILORED BRANDS demonstrated to Plaintiff that it would not recognize her right to take protected leave of absence as prescribed by her treating physicians.

130. Defendant TAILORED BRANDS further acted intentionally and unreasonably with the recognition that its conduct was likely to result in damages through mental distress.

131.    Plaintiff attempted to discuss her physical and mental difficulties with TAILORED BRANDS's managers, supervisors and officials in order to retain her employment free of discrimination and seek redress for the denial and refusal to take protected leave of absence and other illegal conduct practiced upon Plaintiff by Defendant TAILORED BRANDS, but the Defendant was unresponsive to her petitions and instead aggravated her disabilities by causing her health to worsen. As a consequence, Plaintiff was forced to complain against the Defendant TAILORED BRANDS before the California Civil Rights Department.

132.    By reason of the wrongful acts of the Defendant TAILORED BRANDS as hereinabove alleged, Plaintiff was and will be further required to continue to employ physicians, surgeons, psychiatrists and other healthcare providers to examine, treat and care for her and will incur additional medical expenses in an amount to be proven at the time of trial.

133.    As a further proximate result of the conduct of the Defendant TAILORED BRANDS, Plaintiff suffered great emotional distress.  Plaintiff is informed and believes and thereon alleges that the injuries are not compensable under the Workers' Compensation Act and are not a risk or condition of her employment.  Because of the cold, callous and indifferent manner in which Plaintiff was treated; the deliberate and intentional refusal to follow recognized local and state statutes; Defendant, TAILORED BRANDS encouraging and promoting the unlawful practices, Plaintiff became distressed and upset and was caused to experience severe emotional suffering and seeks damages for such mental and emotional distress in a sum according to proof at time of trial.

134.    Because of the aforementioned acts, Plaintiff was prevented from attending to her usual occupation for a period in the future, which amount is not readily ascertainable and will

thereby sustain further loss of earnings. Plaintiff further maintains that when she is eventually released to return to work by her treating physician, she will have difficulty finding comparable employment in her field and industry due to her blemished record that she was involuntarily separated. Plaintiff will therefore request leave of the court to amend this Complaint to state the amount of all such damages when they have been ascertained or upon proof at the time of trial.

135.    In bringing this action, Plaintiff has had to retain the services of the Law Offices of Joseph L. Alioto and Angela Alioto. Government Code § 12965(b) provides that the court may award reasonable attorney's fees and Plaintiff requests such fees to be ordered at the time of arbitration, trial or hearing thereafter.

136.    In doing the acts set forth above, Defendant knew that the systematic campaign and scheme to target Plaintiff based on the discriminatory protected basis was unlawful, illegal, malicious, without justification, unauthorized, unprivileged, wanton, despicable, with reckless disregard, oppressive, and with a conscious disregard for Plaintiff's Civil Rights motivated by pretextual reasons stated above, in violation of Plaintiff's fundamental Civil Rights. Defendant acted with malice because Defendant had no reasonable belief that its behavior was legitimate. Plaintiff's demand thereby warrants the assessment of punitive damages in a sum according to proof. Plaintiff will pray leave of the Court to amend this Complaint to state such amounts at the time they are ascertained, or according to proof at trial.

## SIXTH CAUSE OF ACTION
### BREACH OF THE IMPLIED-IN-FACT CONTRACT OF EMPLOYMENT

137.    Plaintiff realleges and incorporates by reference paragraphs 1, 3-8, 10-62, inclusive, as though fully set forth herein.

138.    During the entire course of Plaintiff's employment with TAILORED BRANDS there existed an implied-in-fact employment contract between Plaintiff and TAILORED BRANDS, which were based on and include, but not limited to, the following terms and conditions:

a)    CHRISTINA ROSA, currently age 42, with over ten (10) years in the eCommerce and Digital Product Management space, a recipient of a Bachelor of Science degree in Art History from the University of California at Berkeley; a recipient of a Masters FA in Merchandising and

1   Product Development from the Academy of Art University San Francisco; and Registered

2   SCRUM Master & Registered Product Owner, on September 24, 2021, received an Offer of

3   Employment letter welcoming her to the Company stating that her position would be titled

4   Product Manager eCommerce on the TAILORED BRANDS team with a pay rate of $150,000.00

5   yearly, with the Company's Annual Incentive Plan of 10%, working remotely.  On October 18,

6   2021, after accepting TAILORED BRANDS' Offer of Employment, CHRISTINA ROSA

7   officially began employment as a full-time salaried eCommerce Product Manager.  Accordingly,

8   based on the written employment agreement and her detrimental reliance that she would be joining

9   TAILORED BRANDS on a long-term basis, CHRISTINA ROSA accepted TAILORED

10  BRANDS's offer of employment; and reasonably intended and expected continued long-term

11  employment supported by the countless promises and representations made to her that she had a

12  future with TAILORED BRANDS.  Plaintiff further expected to retire from TAILORED BRANDS

13  based on her age (currently 42); and the representations by Plaintiff that she expected and intended to

14  remain with the Company and retire from TAILORED BRANDS.

15      b)     Plaintiff performed competently, efficiently, and professionally.   Plaintiff's

16  performance is supported by the salary increases, the numerous accolades and awards received from

17  the industry, and incentive bonuses earned and received; and the repeated assurances of lifetime

18  continued employment.

19      c)     Defendant TAILORED BRANDS employed certain written policies, practices,

20  assurances, and other statements, that Plaintiff had a contract of employment for an indefinite term

21  so long as she performed and carried out her duties in a proper and competent manner.  Moreover,

22  Plaintiff neither agreed nor acknowledged that she was an "at-will" employee subject to summary

23  termination with or without cause or Due Process.

24      d)     TAILORED BRANDS would not evaluate Plaintiff's performance in an arbitrary,

25  unfair, or capricious manner.

26      e)     TAILORED BRANDS would not summarily terminate Plaintiff unless based on

27  serious misconduct and after a good faith reasonable investigation.

28      f)     TAILORED BRANDS would not unilaterally and materially change terms and

1   conditions and benefits of Plaintiff's employment without applying the same standards and rules to
2   other employees.

3       g)      That Plaintiff would not be summarily discharged, or otherwise disciplined other than
4   for good cause without notice, warnings, counseling, progressive discipline, or due process.

5       h)      If grievances or complaints were lodged regarding Plaintiff's performance, she would
6   be entitled to adequate notice and a meaningful opportunity to respond and/or improve, and a
7   thorough investigation.

8       139.    Plaintiff alleges that the Defendant TAILORED BRANDS breached the implied-in-
9   fact contract because TAILORED BRANDS sought to terminate Plaintiff without any relation to
10  her performance or allegations of misconduct.   Plaintiff had an expectation of continued
11  employment with termination only for good cause proven based upon the causes identified in the
12  policies and not on pretextual excuses.

13      140.    Plaintiff further alleges that Defendant TAILORED BRANDS was required by the
14  implied-in-fact employment contract to refrain from violating written promises and representations it
15  had made to Plaintiff and its employees consisting of its own regulations and the assurances stated
16  herein.  The above said acts of TAILORED BRANDS constituted a breach of the implied-in-fact
17  employment contract in that Plaintiff was summarily terminated from her employment with the
18  TAILORED BRANDS based on pretextual excuses in that the TAILORED BRANDS was motivated
19  to take adverse action against Plaintiff because of her repeated and frequent complaining, reporting,
20  and whistleblowing efforts alleged above.

21      141.    By reason of the aforementioned acts, Plaintiff was prevented from attending to her
22  usual occupation for a period in the future, which amount is not readily ascertainable and will thereby
23  sustain further loss of earnings and benefits.  Plaintiff further maintains that she will have difficulty
24  finding comparable employment in her field and industry due to her blemished record that she was
25  involuntarily separated.  Plaintiff will therefore request leave of the court to amend this Complaint to
26  state the amount of all such damages when they have been ascertained or upon proof at the time of
27  trial.

28

**SEVENTH CAUSE OF ACTION**
**FAILURE TO PAY OVERTIME WAGES**

142.    Plaintiff repeats and realleges paragraphs 1, 3-8, 10, 12-17, 26-28, 31, 37, and 46, and incorporates the same as though fully set forth at length.

143.    This is an action at law to recover unpaid overtime wages, and other unpaid compensation.  Jurisdiction in this Court is invoked pursuant to California Labor Code §§ 200, 202, 204, 216, 218, 218.5, 218.6, 226.7, 510, 558.1, 1194, and 1198; and *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785.

144.    "[A]ny employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime, including interest thereon, reasonable attorney's fees, and costs of suit." (Lab. Code § 1194, subd. (a).) Further, "an employer shall keep accurate information with respect to each employee including […] [t]ime records showing when the employee begins and ends each work period. […] [T]otal daily hours worked shall also be recorded." (Cal. Code Regs., tit. 8, § 11040, subd. (7)(A)(3).) "Where the employer has failed to keep records required by statute, […] imprecise evidence by the employee can provide a sufficient basis for damages." (*Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 961.)

145.    Moreover, as the employer, TAILORED BRANDS has the obligation and responsibility to maintain full and accurate personnel and time records for three years (see Labor Code § 1174; Cal. Code Regs., tit. 8, § 11050, subd. 7(A)(3)).  Furthermore, as the employer, TAILORED BRANDS has the burden of disproving that Plaintiff did not work the hours she is claiming.  The United States Supreme Court decided in *Anderson v. Mt. Clemens Pottery Co.* (1945) 328 U.S. 680, 688 [90 L.Ed. 1515, 1523], 66 S.Ct. 1187, that where the **employer** has failed to keep **records** required by statute, the consequences for such failure should fall on the **employer,** not the employee.  In such a situation, imprecise evidence by the employee can provide a sufficient basis for damages. (see *Reeves v. International Tel. & Tel. Corp.* (9th Cir. 1980) 616 F.2d 1342, 1351; *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 961.)  In other words, where the employer has failed to maintain accurate time records, the employee's own statement of time worked will be evidence against the employer.  Given that TAILORED

1  BRANDS failed to keep accurate records of CHRISTINA ROSA's hours worked, her reasonable

2  estimate of hours is sufficient to substantiate her claim.

3       146.   On or about July 19, 2022, VP Digital Product Kelly Helthall provided

4  CHRISTINA ROSA with a "Compensation Change" adjustment letter due to her role shifting

5  from a management position to an individual contributor and new job title of Sr. Product Manager.

6  Specifically, her current base salary of $153,690 and Bonus Target $18,443 (12%) would change

7  to $156,764 with a Bonus Target of $15,676 (10%), effective July 24, 2022.  CHRISTINA ROSA

8  would continue in her non-exempt position with no supervisory or management authority of any

9  subordinate employees.  Between October 18, 2021, through December 16, 2024, CHRISTINA

10 ROSA worked 30 hours of overtime per week.  Accordingly, as a non-exempt employee,

11 CHRISTINA ROSA is entitled to overtime pay in the sum of **$572,983.20** [$77.64 per hour +

12 $38.82 (1½) = $116.46 per hour X 30 hours OT per week X 164 weeks (10/18/2021 –

13 12/16/2024)].

14      147.   CHRISTINA ROSA alleges that she routinely worked daily in excess of eight

15 hours and those work hours were not compensated at her overtime rate.  As such, TAILORED

16 BRANDS is liable for unpaid straight time wages and overtime wages in a sum according to

17 proof.

18      148.   As a proximate result of the refusal to pay Plaintiff's straight and overtime time

19 wages, Plaintiff is entitled to straight and overtime time wages in a sum of according to proof.  As

20 a further proximate result of the refusal to pay Plaintiff's straight time wages, Plaintiff is entitled

21 to an award of waiting time penalties for thirty (30) days pursuant to Labor Code Section 203.

22 Also, as a further proximate result of the refusal to pay Plaintiff's straight time wages, Plaintiff is

23 entitled to an award of interest pursuant to Labor Code Section 218.6 in an amount to be proven at

24 trial.

25      149.   In addition to her claim for wages, Plaintiff is also entitled to an annual simple

26 interest on all unpaid wages of 10%. (*See* Labor Code § 1194, Civil Code § 3289) in an amount to

27 be proven at trial.

28      150.   In bringing this action, Plaintiff has had to retain the services of the Law Offices of

Joseph L. Alioto and Angela Alioto. This pleading shall serve as notice that Plaintiff intends on seeking and recovering reasonable attorney's fees pursuant to Labor Code §§ 98.2, 218.5 and 1194 which provides that the court may award reasonable attorney's fees and costs and Plaintiff requests such fees to be ordered at the time of arbitration, trial or hearing thereafter.

**EIGHT CAUSE OF ACTION**
**FAILURE TO PAY PREMIUM WAGES FOR MISSED 30 MINUTE**
**DUTY-FREE MEAL PERIODS**
**(Pursuant to Labor Code § 226.7)**

151.    Plaintiff repeats and realleges paragraphs 1, 3-8, 10, 12-17, 26-28, 31, 37, and 46, and incorporates the same as though fully set forth at length.

152.    This is an action at law to recover unpaid earnings while working during meal periods or denied and/or interrupted. Jurisdiction in this Court is invoked pursuant to California Labor Code §§ §§ 200, 202, 204, 216, 218, 218.5, 218.6, 226.7, 510, 558.1, 1194, and 1198; and *Ramirez v. Yosemite Water Co*. (1999) 20 Cal.4th 785. At all times herein set forth, the IWC Wage Order applicable to Plaintiff's employment by Defendant provides as follows:

"11.    **Meal Periods**

(A)    No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. Unless the employee is relieved of all duty during a 30-minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(B)    If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided."

153.    An employer shall not require an employee to work during a meal period. (Lab.

-37-
COMPLAINT FOR DAMAGES
*CHRISTINA ROSA v. TAILORED BRANDS, et al.*

1  Code § 226.7, subd. (a).)  Failure to provide a meal period in accordance with state law requires

2  the employer to pay "the employee one additional hour of pay at the employee's regular rate of

3  compensation for each workday the meal […] period is not provided." (*Id.* at subd. (b).) In order

4  to comply with its meal period obligation, an employer must relieve the employee of all duty,

5  relinquish control over their activities and permit them a reasonable opportunity to take an

6  uninterrupted 30-minute break. (*Brinker Restaurant Corp. v. Superior Court*, (2012) 53 Cal. 4th

7  1004, 1040.)

8      154.    Further, "an employer shall keep accurate information with respect to each

9  employee including […] [t]ime records showing when the employee begins and ends each work

10  period. Meal periods […] shall also be recorded." (Cal. Code Regs., tit. 8, § 11040, subd.

11  (7)(A)(3).) "Where the employer has failed to keep records required by statute, […] imprecise

12  evidence by the employee can provide a sufficient basis for damages." (*Cicairos v. Summit*

13  *Logistics, Inc.* (2005) 133 Cal.App.4th 949, 961.)

14      155.    On or about July 19, 2022, VP Digital Product Kelly Helthall provided

15  CHRISTINA ROSA with a "Compensation Change" adjustment letter due to her role shifting

16  from a management position to an individual contributor and new job title of Sr. Product Manager.

17  Specifically, her current base salary of $153,690 and Bonus Target $18,443 (12%) would change

18  to $156,764 with a Bonus Target of $15,676 (10%), effective July 24, 2022.  CHRISTINA ROSA

19  would continue in her non-exempt position with no supervisory or management authority of any

20  subordinate employees.  Between October 18, 2021, through December 16, 2024, CHRISTINA

21  ROSA reasonably estimates that she worked fourteen (14) hours daily and was invariably

22  prevented from taking a 30 minute duty-free uninterrupted lunch.  CHRISTINA ROSA further

23  alleges that she either did not take her daily lunch periods or they were simply interrupted on a

24  constant and daily basis.

25      156.    CHRISTINA ROSA alleges that TAILORED BRANDS failed to provide her with

26  30-minute duty free meal breaks.  Furthermore, because TAILORED BRANDS failed to keep

27  accurate records, CHRISTINA ROSA's reasonable estimates are sufficient to prove her damages.

28  As such, TAILORED BRANDS is liable for compensation for failure to provide meal periods

and/or without interruption. Based on the daily duties and tasks performed by CHRISTINA ROSA as discussed above, CHRISTINA ROSA cannot simply meet the test as a matter of law for an "exempt" employee pursuant to California's IWC Order No. 4-2001. As such, CHRISTINA ROSA is owed one hour of wages for each day she was not able to take a 30-minute duty-free meal (or, if applicable, two meals where she worked ten hours per day). Accordingly, CHRISTINA ROSA is owed **$63,664.80** in meal break premiums [1.0-hour X $77.64 hourly rate ($161,498 annual salary ÷ 52 weeks = $3,105.73 weekly ÷ 40 hours weekly = $77.64 hourly rate) X 820 days (52 + 52 + 60 = 164 total five-day work weeks or 10/18/2021 – 12/16/2024)]. Please note that this excludes two meals where she worked ten hours per day. (see Labor Code § 226.7, subd. (a); and *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1040.)

157.    In addition to her claim for wages, Plaintiff is also entitled to an annual simple interest on all unpaid wages of 10% (*See* Labor Code §§ 226.7 & 1194, Civil Code § 3289) in a sum of according to proof at time of trial.

158.    In bringing this action, Plaintiff has had to retain the services of the Law Offices of Joseph L. Alioto and Angela Alioto. This pleading shall serve as notice that Plaintiff intends on seeking and recovering reasonable attorney's fees pursuant to Labor Code §§ 98.2, 218.5 and 1194 which provides that the court may award reasonable attorney's fees and costs and Plaintiff requests such fees to be ordered at the time of arbitration, trial or hearing thereafter.

### NINTH CAUSE OF ACTION
### FAILURE TO PAY PREMIUM WAGES FOR MISSED 10 MINUTE
### DUTY-FREE REST PERIODS
### (Pursuant to Labor Code § 226.7)

159.    Plaintiff repeats and realleges paragraphs 1, 3-8, 10, 12-17, 26-28, 31, 37, and 46, and incorporates the same as though fully set forth at length.

160.    This is an action at law to recover unpaid earnings while working during rest periods or denied and/or interrupted. Jurisdiction in this Court is invoked pursuant to California Labor Code §§ §§ 200, 202, 204, 216, 218, 218.5, 218.6, 226.7, 510, 558.1, 1194, and 1198; and *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785. At all times herein set forth, the IWC Wage Order applicable to Plaintiff's employment by Defendant provides as follows:

"12.   **Rest Periods**

(A)     Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3½) hours.  Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages."

161.    If an employer fails to provide an employee with a rest period mandated by law, the employer must pay to that employee an hour of pay at that employee's regular rate of pay for each day a rest period was not provided. (Lab. Code § 226.7.)  An employer's obligation as it relates to rest periods is to "*authorize* and permit all employees to take rest periods […] at the rate of ten (10) minutes net rest time per four hours or major fraction thereof." (Cal. Code Regs., tit. 8, § 11050, subd. (12)(A) (emphasis added); *see also Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 269 (best construction of Wage Order, subdivision 12(A) is that it "obligates employers to permit – *and authorizes employees to take* – off-duty rest periods") (emphasis added).)

162.    CHRISTINA ROSA alleges that she routinely was required to work at all times without taking rest periods.  Therefore, CHRISTINA ROSA did not receive a compliant rest break any day that she worked four hours or a major fraction thereof, and she is entitled to a rest break premium equal to one hour of wages at her regular rate of pay for each day she did not receive one.  As such, TAILORED BRANDS is liable for compensation for failure to provide rest periods and/or without interruption.  As such, CHRISTINA ROSA is owed **$63,664.80** in rest breaks premiums [one per day or 1.0-hour X $77.64 hourly rate ($161,498 annual salary ÷ 52 weeks = $3,105.73 weekly ÷ 40 hours weekly = $77.64 hourly rate) X 820 days (52 + 52 + 60 = 164 total five-day work weeks or 10/18/2021 – 12/16/2024)]. Please note that this excludes rest breaks where she worked ten hours per day and Saturdays. (see Labor Code § 226.7.)

163.    In addition to her claim for wages, Plaintiff is also entitled to an annual simple interest on all unpaid wages of 10% (*See* Labor Code §§ 226.7 & 1194, Civil Code § 3289) in a

1    sum of according to proof at time of trial.

2        164.    In bringing this action, Plaintiff has had to retain the services of the Law Offices of

3    Joseph L. Alioto and Angela Alioto.  This pleading shall serve as notice that Plaintiff intends on

4    seeking and recovering reasonable attorney's fees pursuant to Labor Code §§ 98.2, 218.5 and 1194

5    which provides that the court may award reasonable attorney's fees and costs and Plaintiff

6    requests such fees to be ordered at the time of arbitration, trial or hearing thereafter.

7

8                              **TENTH CAUSE OF ACTION**
         **FAILURE TO PROVIDE ACCURATE WAGE STATEMENT**
                          **(Pursuant to Labor Code § 226)**

9        165.    Plaintiff repeats and realleges paragraphs 1, 3-8, 10, 12-17, 26-28, 31, 37, and 46,

10   and incorporates the same as though fully set forth at length.

11       166.    This is an action at law to recover for failure to provide accurate wage statements.

12   Jurisdiction in this Court is invoked pursuant to California Labor Code § 226, subd. (e) which

13   provides: "An employer, semimonthly or at the time of each payment of wages, shall furnish to his

14   or her employee, […] an accurate itemized statement in writing showing [*inter alia*] […] (2) total

15   hours worked by the employee, […] and (9) all applicable hourly rates in effect during the pay

16   period and the corresponding number of hours worked at each hourly rate by the employee[.]"

17   (Lab. Code § 226, subd. (a).)  Where an employee "cannot promptly and easily determine from the

18   wage statement alone […] information to be provided on the itemized wage statement pursuant to

19   items (2) to (4), inclusive, and (9) of subdivision (a)," that employee has suffered "an injury."

20   (Labor Code § 226.7, subd. (e).)  Such an employee "is entitled to recover the greater of all actual

21   damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one

22   hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed

23   four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

24   (*Id.*)

25       167.    Plaintiff alleges that none of her wage statements contained the total hours she

26   worked, or the applicable rates of pay for each hour worked.  Accordingly, Plaintiff is entitled to

27   the wage statement penalty in a sum of according to proof at time of trial.

28       168.    In bringing this action, Plaintiff has had to retain the services of the Law Offices of

1  Joseph L. Alioto and Angela Alioto.  This pleading shall serve as notice that Plaintiff intends on

2  seeking and recovering reasonable attorney's fees pursuant to Labor Code § 226, subdiv. (e)(1),

3  which provides that the court may award reasonable attorney's fees and costs and Plaintiff

4  requests such fees to be ordered at the time of arbitration, trial or hearing thereafter.

5  **PRAYER FOR RELIEF**

6  WHEREFORE, Plaintiff CHRISTINA ROSA prays for judgment against the Defendant as

7  follows:

8  **AS TO THE FIRST CAUSE OF ACTION:**

9  1. For general damages in a sum according to proof;

10  2. For special damages in a sum according to proof;

11  3. For attorney's fees and costs in a sum according to proof; and

12  4. For punitive damages in a sum according to proof.

13  **AS TO THE SECOND CAUSE OF ACTION:**

14  1. For general damages in a sum according to proof;

15  2. For special damages in a sum according to proof;

16  3. For attorney's fees and costs in a sum according to proof; and

17  4. For punitive damages in a sum according to proof.

18  **AS TO THE THIRD CAUSE OF ACTION:**

19  1. For general damages in a sum according to proof;

20  2. For special damages in a sum according to proof;

21  3. For attorney's fees and costs in a sum according to proof; and

22  4. For punitive damages in a sum according to proof.

23  **AS TO THE FOURTH CAUSE OF ACTION:**

24  1. For general damages in a sum according to proof;

25  2. For special damages in a sum according to proof;

26  3. For attorney's fees and costs in a sum according to proof; and

27  4. For punitive damages in a sum according to proof.

28

**AS TO THE FIFTH CAUSE OF ACTION:**

    1. For general damages in a sum according to proof;

    2. For special damages in a sum according to proof;

    3. For attorney's fees and costs in a sum according to proof; and

    4. For punitive damages in a sum according to proof.

**AS TO THE SIXTH CAUSE OF ACTION:**

    1. For general damages in a sum according to proof.

**AS TO THE SEVENTH CAUSE OF ACTION:**

    1. For general damages in a sum according to proof;

    2. For straight and overtime time wages in a sum according to proof;

    3. For an award of waiting time penalties for thirty (30) days pursuant to Labor Code Section 203 in a sum according to proof;

    4. For an award of interest pursuant to Labor Code Section 218.6 in a sum according to proof;

    5. For annual simple interest on all unpaid wages of 10% pursuant to Labor Code §§ 226.7 & 1194, Civil Code § 3289 in a sum according to proof; and

    6. For reasonable attorney's fees and costs pursuant to Labor Code §§ 98.2, 218.5 and 1194 in a sum according to proof.

**AS TO THE EIGHT CAUSE OF ACTION:**

    1. For meal break premiums in a sum according to proof;

    2. For an award of waiting time penalties for thirty (30) days pursuant to Labor Code Section 203 in a sum according to proof;

    3. For an award of interest pursuant to Labor Code Section 218.6 in a sum according to proof;

    4. For annual simple interest on all unpaid wages of 10% pursuant to Labor Code §§ 226.7 & 1194, Civil Code § 3289 in a sum according to proof; and

    5. For reasonable attorney's fees and costs pursuant to Labor Code §§ 98.2, 218.5 and 1194 in a sum according to proof.

**AS TO THE NINTH CAUSE OF ACTION:**

1.  For rest break premiums in a sum according to proof;

2.  For an award of waiting time penalties for thirty (30) days pursuant to Labor Code Section 203 in a sum according to proof;

3.  For an award of interest pursuant to Labor Code Section 218.6 in a sum according to proof;

4.  For annual simple interest on all unpaid wages of 10% pursuant to Labor Code §§ 226.7 & 1194, Civil Code § 3289 in a sum according to proof; and

5.  For reasonable attorney's fees and costs pursuant to Labor Code §§ 98.2, 218.5 and 1194 in a sum according to proof.

**AS TO THE TENTH CAUSE OF ACTION:**

1.  For penalties for noncompliance with her wage statements in a sum according to proof; and

2.  For reasonable attorney's fees and costs pursuant to Labor Code §§ 98.2, 218.5 and 1194 in a sum according to proof.

**AS TO ALL CAUSES OF ACTION:**

1.  For cost of suit herein incurred

2.  For such other and further relief as the Court may deem just and proper; and

3.  Plaintiff hereby demand a jury trial on all issues and causes of action in the above entitled action.

DATED: June ____, 2025

                                          **LAW OFFICES OF JOSEPH L. ALIOTO AND ANGELA ALIOTO**

                                          Angela M. Alioto, Esq.
                                          Angela Mia Veronese, Esq.
                                          Attorneys for Plaintiff CHRISTINA ROSA

1 | DATED: June 17, 2025                    **THE VEEN FIRM LLP**

2

3

4                                      By: _____

5                                          Josephine L. Alioto, Esq.
                                           Jessica Ng, Esq.
                                           Attorneys for Plaintiff CHRISTINA ROSA

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
07/17/2025
CT Log Number 549629743

## Service of Process Transmittal Summary

**TO:**  Legal Department, Owner
The Men's Wearhouse
5601 ARNOLD RD STE 200
DUBLIN, CA 94568-7724

**RE:**  **Process Served in California**

**FOR:**  Tailored Shared Services, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: CHRISTINA ROSA // To: Tailored Shared Services, LLC |
| **CASE #:** | CGC25626353 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 07/17/2025 at 09:11 |
| **JURISDICTION SERVED:** | California |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification, Legal Department  LegalDept@tmw.com |
| | Email Notification, Irene Guzman  irene.guzman@tailoredbrands.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 330 N BRAND BLVD |
| | STE 700 |
| | GLENDALE, CA 91203 |
| | 866-401-8252 |
| | LargeCorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                           Thu, Jul 17, 2025
**Server Name:**                    Gary Hansen

| Entity Served | TAILORED SHARED SERVICES, LLC |
|---|---|
| Case Number | CGC25626353 |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY |
|---|---|
| | *(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Tailored Shared Services, LLC, dba Tailored Brands, Inc., and Does 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CHRISTINA ROSA

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*
   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| *(El nombre y dirección de la corte es):* Superior Court of the State of California, | *(Número del Caso):* |
| County of San Francisco, 400 McAllister St, San Francisco, CA 94102 | **CGC-25-626353** CGC-25-626353 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Angela M. Alioto, 700 Montgomery St, 3rd Fl., San Francisco, CA 94111, (415) 434-8700

| DATE: | Clerk, by | , Deputy |
|---|---|---|
| *(Fecha)* **07/14/2025** | *(Secretario)* **MADONNA CARANTO** | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:
3. [X] on behalf of *(specify)*: TAILORED SHARED SERVICES, LLC, DBA TAILORED BRANDS, INC.
   under: [ ] CCP 416.10 (corporation)       [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)   [ ] CCP 416.90 (authorized person)
          [xx] other *(specify)*:   Corp. Code Sect. 17701.16 LLC
4. [ ] by personal delivery on *(date)*:

Page 1 of 1

| Form Adopted for Mandatory Use | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|
| Judicial Council of California | | *www.courts.ca.gov* |
| SUM-100 [Rev. July 1, 2009] | | |

ANGELA M. ALIOTO (SBN 130328)
ANGELA MIA VERONESE (SBN 269942)
**LAW OFFICES OF JOSEPH L. ALIOTO**
**AND ANGELA ALIOTO**
700 Montgomery Street
San Francisco, CA 94111-2104
Telephone: (415) 434-8700
Facsimile: (415) 438-4638

JOSEPHINE L. ALIOTO (SBN 282989)
JESSICA NG (SBN 352917)
**THE VEEN FIRM LLP**
20 Haight Street
San Francisco, California 94102
Telephone: (415) 673-4800
Facsimile: (415) 771-5845
JA.team@VeenFirm.com

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**07/08/2025**
**Clerk of the Court**
BY: MADONNA CARANTO
Deputy Clerk

Attorneys for Plaintiff CHRISTINA ROSA

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| CHRISTINA ROSA, | CASE NO. CGC-25-626353 |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR DAMAGES:** |
| vs. | 1. **DISCRIMINATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON PHYSICAL AND/OR MENTAL DISABILITY;** |
| TAILORED SHARED SERVICES, LLC dba TAILORED BRANDS, INC., and DOES 1 through 10, inclusive, | 2. **DISCRIMINATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON FAILURE TO REASONABLY ACCOMMODATE IN GOOD FAITH;** |
| Defendants. | 3. **DISCRIMINATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN GOOD FAITH;** |
| | 4. **RETALIATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON COMPLAINING AND REPORTING DISCRIMINATION AND UNFAIR TREATMENT;** |
| | 5. **DISCRIMINATION BASED ON VIOLATION OF CFRA LEAVE;** |
| | 6. **BREACH OF THE IMPLIED-IN-FACT CONTRACT OF EMPLOYMENT;** |
| | 7. **FAILURE TO PAY OVERTIME WAGES;** |
| | 8. **FAILURE TO PAY PREMIUM WAGES FOR MISSED 30 MINUTE DUTY-FREE MEAL PERIODS;** |

9. **FAILURE TO PAY PREMIUM WAGES FOR MISSED 10 MINUTE DUTY-FREE REST PERIODS; and**
10. **FAILURE TO PROVIDE ACCURATE WAGE STATEMENT**

**DEMAND FOR JURY TRIAL**

Plaintiff CHRISTINA ROSA, alleges as follows:

I.    **JURISDICTION, VENUE AND PARTIES**

1.    During the relevant times herein mentioned, Plaintiff CHRISTINA ROSA (hereinafter referred to as either "CHRISTINA ROSA" or "Plaintiff") is a citizen of the United States and a resident in the City of San Francisco, County of San Francisco, State of California.

2.    This is a case of discrimination based on mental and physical disabilities, denial of reasonable accommodation, refusal to engage in the interactive process in good faith, violations of CFRA, gender discrimination, harassment, hostile work environment, retaliation, wrongful termination, wage and hour violations, and intentional infliction of emotional distress. The Defendant TAILORED SHARED SERVICES, LLC dba TAILORED BRANDS, INC. (hereinafter referred to "TAILORED BRANDS") has refused to take the necessary steps to abate, prevent and eliminate such behavior and instead terminated this Plaintiff.

3.    Defendant TAILORED BRANDS, is an American retail holding company for various men's apparel stores, headquartered in Houston, Texas, with additional corporate offices in Dublin, California.

4.    Venue in this Court is proper because all of the unlawful employment practices alleged herein occurred within the City of San Francisco, County of San Francisco, State of California.

5.    Plaintiff is ignorant of the true names or capacities of the Defendants sued here under the fictitious names DOE 1 through DOE 10, inclusive. Plaintiff is informed and believes that each DOE Defendant was responsible in some manner for the occurrences and injuries alleged in this Complaint.

6.    At all times mentioned in the causes of action into which this paragraph is

1  incorporated by reference, each and every Defendant was the agent or employee of TAILORED
2  BRANDS. In doing the things alleged in the causes of action into which this paragraph is
3  incorporated by reference, each and every Defendant was acting within the course and scope of the
4  agency or employment and was acting with the consent, permission, and authorization of
5  TAILORED BRANDS. All actions of each Defendant alleged in the causes of action into which
6  this paragraph is incorporated by reference were ratified and approved by the officers or managing
7  agents of TAILORED BRANDS.

8          7.      In doing the things hereinafter alleged, the individual Defendants, whether named
9  or unnamed, were acting in concert with and under the direction, or with the express or implied
10  ratification, of their superiors, supervisors and employer and the named Defendants. Plaintiff is
11  informed and believes and thereon alleges that the conduct of the individually named and
12  unnamed Defendants was known to the other Defendants and such conduct was expressly or
13  impliedly condoned and ratified by the named Defendants. Plaintiff is further informed and
14  believes that the named Defendants failed to criticize, censure, terminate, suspend or otherwise
15  take any action against the unnamed Defendants once informed of their conduct.

16         8.      Damages in this matter exceed and are greater than $25,000 thereby subject to the
17  San Francisco County Superior Court's unlimited jurisdiction.

18      **II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES**

19         9.      Plaintiff has fully and timely exhausted her statutory administrative remedies with
20  the California Civil Rights Department (CRD) [formerly the California Fair Employment and
21  Housing].

22      **III.   FACTUAL ALLEGATIONS**

23         10.     CHRISTINA ROSA, currently age 42, of Middle Eastern descent and heritage -
24  Asian/White/Caucasian, with over ten (10) years in the eCommerce and Digital Product
25  Management space. CHRISTINA ROSA, is a recipient of a Bachelor of Science degree in Art
26  History from the University of California at Berkeley; a recipient of a Masters FA in
27  Merchandising and Product Development from the Academy of Art University San Francisco; and
28  Registered SCRUM Master & Registered Product Owner.

11.    In or about 2015, CHRISTINA ROSA was medically diagnosed with having PTSD and chronic anxiety, IBS, and depression.   TAILORED BRANDS was ostensibly aware of CHRISTINA ROSA's medical diagnosis.

12.    On or about September 24, 2021, TAILORED BRANDS provided CHRISTINA ROSA with an Offer of Employment letter welcoming her to the Company stating that her position would be titled Product Manager eCommerce on the TAILORED BRANDS team with a pay rate of $150,000.00 yearly, with the Company's Annual Incentive Plan of 10%, working remotely. Though CHRISTINA ROSA was classified as a "manager" by TAILORED BRANDS, she was truly a non-exempt employee as defined by the California DLSE and IWC Order No. 4-2001 as hereinafter alleged.

13.    On or about October 18, 2021, after accepting TAILORED BRANDS' Offer of Employment, CHRISTINA ROSA officially began employment as a fulltime salaried eCommerce Product Manager.

14.    On or about July 19, 2022, VP Digital Product Kelly Helthall provided CHRISTINA ROSA with a "Compensation Change" adjustment letter due to her role shifting from a management position to an individual contributor and new job title of Sr. Product Manager. Specifically, her current base salary of $153,690 and Bonus Target $18,443 (12%) would change to $156,764 with a Bonus Target of $15,676 (10%), effective July 24, 2022.  CHRISTINA ROSA would continue in her non-exempt position with no supervisory or management authority of any subordinate employees.

15.    On or about July 25, 2022, CHRISTINA ROSA was assigned to a new manager, Carlette Bell.

16.    In or about August 2022, CHRISTINA ROSA requested to be placed fulltime on the "Wedding Wingman" product ["WW" – Wedding Wingman brainstormed, dubbed, and coined by CHRISTINA ROSA] which was also recommended by Bain & Company, due to the project's depth scope and tight deliverable timeline.  CHRISTINA ROSA brought these facts and requests to her manager, Carlette Bell, as well as leadership.  CHRISTINA ROSA's dedication, expertise and work ethic on WW did not go unnoticed.  On or about August 16, 2022, SVP of Digital

1  Suzanne Scott emailed CHRISTINA ROSA praising her for doing a good job on the WW project.
2  Moreover, on or about September 28, 2022, CHRISTINA ROSA (and the WW team) successfully
3  launched the PMVP of WW on time, and she received more recognition and praise for her work-
4  ethic, breadth of skills, and positive and upbeat personality – teammates & stakeholders
5  commented that she was "sunshine" to the group and asked "what couldn't Christina do?"
6  CHRISTINA ROSA worked on average 70 hours plus per week.  CHRISTINA ROSA was a loyal
7  and committed employee, always going above and beyond of what was expected.  She took great
8  pride in her work.

9          17.     In or about the fall of 2022, CHRISTINA ROSA was subjected to an increasing
10  hostile work environment and harassment by her co-worker Senior Technical Product Manager
11  Shashaank Thota, who was verbally aggressive and demeaning to CHRISTINA ROSA and all the
12  female employees.     Shashaank Thota's behavior caused great stress among the team.
13  CHRISTINA ROSA filed a complaint with HR and management regarding Shashaank Thota's
14  abusive and discriminatory (Gender) behavior.  As a result of his behavior, CHRISTINA ROSA's
15  anxiety, migraines and stomach issues were exasperated, in addition to working 70-89 hours a
16  week.   As a result on or about October 4, 2022, CHRISTINA ROSA underwent a medical
17  endoscopy for severe stomach issues.

18          18.     On or about October 19, 2022, via Teams, Harish Wairagade SVP of Engineering
19  eCommerce leadership informed CHRISTINA ROSA that she was doing a great job and "keep it
20  up."   This note was also shared with HR and leadership to make them aware of CHRISTINA
21  ROSA's performance.

22          19.     On or about November 2, 2022, via email, CHRISTINA ROSA complained to WW
23  leadership that Senior Technical Product Manager Shashaank Thota was yelling and verbally
24  assaulting the WW team, specifically the women, during a team meeting.  CHRISTINA ROSA
25  complained that Shashaank Thota was aggressive, condescending, demeaning, and deriding to
26  CHRISTINA ROSA and the other staff and that this was unacceptable behavior and treatment.
27  Moreover, on or about November 2, 2022, CHRISTINA ROSA again complained to Carlette Bell
28  that Shashaank Thota's unacceptable behavior toward women was creating a hostile work and

1 | harassing environment.

2 |     20.    On or about November 7, 2022, CHRISTINA ROSA met with Product Director of
3 | Rental Men's Wearhouse Dan Carpenter, Carlette Bell, and the WW Team, to revisit the scope of
4 | everyone's role.  On or about November 8 and 9, 2022, CHRISTINA ROSA met with Sr. Human
5 | Resources Business Partner Corporate Kristin Jackson to follow up on her complaints and share
6 | documents regarding Shashaank Thota's discriminatory and abusive behavior was that of creating
7 | a hostile work and harassing environment and putting the project in jeopardy.

8 |     21.    On or about November 17, 2022, CHRISTINA ROSA underwent another medical
9 | procedure and scan regarding her stomach/digestive issues attributed to the hostile work
10 | environment and leadership's neglect and inaction to her complaints.

11 |     22.    On or about December 7, 2022, CHRISTINA ROSA again complained to Kristin
12 | Jackson of HR regarding Shashaank Thota's behavior.  Specifically, CHRISTINA ROSA
13 | informed Kristin Jackson that there was no progress or improvement with Shashaank Thota, it was
14 | becoming very clear that CHRISTINA ROSA's complaints were not acted upon or taken
15 | seriously.

16 |     23.    On or about December 12, 2022, CHRISTINA ROSA provided a letter to SVP of
17 | Digital Suzanne Scott, cc to Carlette Bell, complaining about Shashaank Thota's behavioral
18 | issues.  Again, on or about December 21, 2022, CHRISTINA ROSA once again reached out to
19 | Suzanne Scott complaining that Shashaank Thota continued with the behavior described above.
20 | Ms. Scott was evasive with Plaintiff and in fact, Ms. Scott never planned the meeting. It was
21 | becoming clear to CHRISTINA ROSA that her complaints were not being investigated and
22 | instead her complaints went nowhere.

23 |     24.    On or about December 31, 2022, CHRISTINA ROSA underwent X-rays and MRI
24 | for her broken ankle and fractured fibula she sustained while on vacation in Mexico City.  Soon
25 | thereafter, CHRISTINA ROSA notified leadership, Carlette Bell, HR, and the WW team of her
26 | injury and that she would continue working remotely.

27 |     25.    On or about January 11, 2023, Carlette Bell questioned CHRISTINA ROSA's sick
28 | time relating to her broken ankle and fractured fibula.  From that date forward, Carlette Bell began

1 | an unsupportive working environment micromanaging her work. CHRISTINA ROSA's workload
2 | increased to an average of 80 hours per week.

3 |      26.    On or about February 22, 2023, CHRISTINA ROSA's physical health began to
4 | further decline due to overwhelming demands of working 80 plus hours a week (required to work
5 | only 40 hours flat in her non-exempt position) particularly with a misogynistic teammate,
6 | Shashaank Thota. CHRISTINA ROSA met with the Leave Department regarding her medical
7 | condition, options, and concerns. CHRISTINA ROSA suspected and began to experience that
8 | Carlette Bell was in the process of phasing her out due to her disabilities and her complaints about
9 | Shashaank Thota. In retaliation, the micromanaging increased and her work performance, for the
10 | first time was being questioned, in spite of the fact that she was successfully on track to scale the
11 | Wedding Wingman product, which she helped brainstorm, and was heavily supported by the C-
12 | Suite, to over 600 stores nationwide, which she successfully accomplished in the Spring of 2023.

13 |      27.    On or about February 27, 2023, CHRISTINA ROSA once again met with the
14 | Leave Department regarding the final details for FMLA leave. After memorializing her complaint
15 | against Carlette Bell, it was agreed that CHRISTINA ROSA would work part-time (20 hours
16 | weekly) in order to make traction on WW and deliver the MVP of the WW product and ensure
17 | that the project remained on track and developed without any glitches or problems. CHRISTINA
18 | ROSA was committed to her job and proud of her work.

19 |      28.    On or about February 28, 2023, or March 1, 2023, as a courtesy call, CHRISTINA
20 | ROSA called Carlette Bell to inform her that she was taking FMLA leave on a part-time basis
21 | effective March 1, 2023. In response, Carlette Bell began to yell at CHRISTINA ROSA "Why are
22 | you scaling back your job hours? Who is going to do your work?" CHRISTINA ROSA replied
23 | that she needed to attend to her health concerns. Carlette Bell expressed that she was not pleased
24 | or happy with CHRISTINA ROSA's decision, frustrated Carlette Bell abruptly and
25 | inappropriately hung up on CHRISTINA ROSA. CHRISTINA ROSA was left in awe and
26 | anxious at the zero empathy for her health and wellbeing from her manager.

27 |      29.    On or about March 1, 2023, via email, CHRISTINA ROSA notified VP of Digital
28 | Product Kelly Helthall and HR of the inappropriate and hostile call she had with Carlette Bell the

1    previous day regarding taking FMLA leave.

2        30.    On or about March 2, 2023, via email, CHRISTINA ROSA further notified the

3    WW team of her intermittent FMLA leave and the scaling back of her work hours effective March

4    1, 2023.   On that same day, CHRISTINA ROSA again notified HR of Carlette Bell's blatant

5    disregard for her disability, the aggressive, insensitive, sarcastic, and argumentative tone she was

6    subjected to concerning taking FMLA leave.    Later that day, CHRISTINA ROSA again

7    experienced very aggressive and 'fight' provoking IMs (via Teams) from Carlette Bell causing

8    CHRISTINA ROSA to politely excuse herself from the IM thread and mentioned that Carlette

9    Bell should reach out to the Leave Department with any details on her leave.

10        31.    By April 3, 2023, the MVP of Wedding Wingman had been delivered and scaled

11    nationally to over 600 stores.   In appreciation for her commitment and great job, on or about April

12    14, 2023, Co-CEO Bob Hull and CEO Peter Sachse provided CHRISTINA ROSA with a FY22

13    (Fiscal Year 2022) Total Compensation Statement whereby her current annual salary of $156,764

14    was increased to $158,332 effective March 26, 2023, for being "a valued employee."

15    CHRISTINA ROSA further received a Target 10% AIP of $31,353, boosted by a 200% BPP,

16    resulting in a bonus of $31,353 and a Total Cash Compensation (Base + Increases + 2022 AIP) of

17    $189,684.

18        32.    On or about May 11, 2023, after once again formalizing her complaint against

19    Carlette Bell, CHRISTINA ROSA met with HR concerning FMLA and Carlette Bell's overall

20    hostile and discriminatory treatment.   CHRISTINA ROSA requested that she be permitted to

21    report directly to Kelly Helthall instead of Carlette Bell.   CHRISTINA ROSA was denied her

22    request without any justifiable reason.   It was clear to CHRISTINA ROSA that Carlette Bell had a

23    blatant disregard and discriminatory attitude toward CHRISTINA ROSA's disability and FMLA

24    request.

25        33.    On or about May 18, 2023, Kristin Jackson displayed her lack of effort to

26    empathize, cooperate, or have any concerns for what was going to happen to CHRISTINA

27    ROSA's job.   CHRISTINA ROSA stressed that she felt she was going to be phased out and

28    terminated due to her disability which was exacerbated by the hostile work environment.   There

1 was no clear direction from Kristin Jackson regarding Carlette Bell and no assurance of job
2 security.

3        34.    On or about July 13, 2023, via email, CHRISTINA ROSA inquired of Carlette Bell
4 and Kristin Jackson what it would be like upon her return to full time (from 20 hours to 40 hours a
5 week) from FMLA, ending on August 8, 2023.  Despite this inquiry, CHRISTINA ROSA was not
6 provided with any return-to-full time work details which became unsettling and concerning to her.

7        35.    On August 4, 2023, Ms. Rosa underwent an MRI on her brain due excessive and
8 persistent migraines due to the stress of her employment, long hours  and hostile work
9 environment. On or about August 8, 2023, upon returning to full time, Carlette Bell began overtly
10 to display her unkindness, lack of compassion, and lack of empathy toward CHRISTINA ROSA
11 and failed to provide direction for her career path.  The discrimination and harassment based on
12 CHRISTINA ROSA's disability and leave and retaliation for going to HR was evident.  This
13 behavior heightened and aggravated CHRISTINA ROSA's anxiety and PTSD.

14        36.    On or about August 11, 2023, Carlette Bell continued and persisted with
15 unreasonable nitpicking, finding fault, and micromanaging CHRISTINA ROSA, thereby creating
16 a paper trail and list of items to discuss on the next weekly one-on-one meeting between the two.
17 It was clear to CHRISTINA ROSA that she was being discriminated against for her disabilities
18 and retaliated against for filing complaint of Carlette Bell and Shashaank Thota.  Carlette Bell was
19 aware of CHRISTINA ROSA's complaints against her and her request to change manager, which
20 TAILORED BRANDS ignored.

21        37.    On or about August 30, 2023, CHRISTINA ROSA returned to full time, due to the
22 fact that her FMLA had expired.  CHRISTINA ROSA needed her job and was relying on
23 TAILORED BRANDS accommodating a 40-hour a week work week.  CHRISTINA ROSA
24 abruptly was thrown back into an 80-hour work week, despite her request for a 40 hour a week
25 work schedule and her medical mental condition caused by Carlette Bell and TAILORED
26 BRANDS.  At this time, Ms. Rosa reached out to Ms. Helthall and asked if they would resume
27 their regular meetings, as was the norm with the rest of the Product Team.  Ms. Helthall suggested
28 once a month, as opposed to once a week like the rest of the team.  Ms. Rosa began to feel as

1 | though she was being treated differently based as a result of her medical issues.

2 |     38.    On or about September 1, 2023, CHRISTINA ROSA underwent a previously
3 | scheduled colonoscopy due to extreme digestive IBS issues caused by stress and the hostile work
4 | environment caused by her employer.

5 |     39.    On or about September 25, 2023, CHRISTINA ROSA requested full-time medical
6 | leave of absence with a return date in February 2024 based on her declining health and spike in
7 | anxiety due to TAILORED BRANDS and their complete disregard of CHRISTINA ROSA's
8 | requests for reasonable accommodation and complaints.

9 |     40.    On or about January 16, 2024, via email, CHRISTINA ROSA notified Leave of
10 | Absence Manager Amanda Post with the Leave Department that she sent her a return-to-work note
11 | – cleared to return to work full time remotely with a managerial change request from her doctor
12 | with a start date of 2/19/2024.  For fear of further discrimination, harassment and retaliation,
13 | CHRISTINA ROSA requested not to work with Carlette Bell.  The Leave Department informed
14 | CHRISTINA ROSA that her requests would continue to be reviewed by Carlette Bell because she
15 | was her manager, despite the fact that CHRISTINA ROSA was again requesting a new manager.

16 |     41.    On or about between January 31, 2024, and February 16, 2024, given the toxicity
17 | of being regularly harassed, denigrated, and derided, CHRISTINA ROSA simply requested a
18 | managerial change.  At that time, CHRISTINA ROSA provided her treating physician's note to
19 | the Leave Department and Kristin Jackson supporting the request for managerial change prior to
20 | her return to work and a 40-hour work week.   HR replied that no conversations for
21 | accommodation would occur until CHRISTINA ROSA returned to work because she was on
22 | medical leave.

23 |     42.    On or about February 16, 2024, CHRISTINA ROSA's treating physician issued
24 | another script notifying TAILORED BRANDS that CHRISTINA ROSA has been evaluated for
25 | work accommodation and may resume her fulltime job responsibilities starting on February 19,
26 | 2024 and that it would be beneficial to CHRISTINA ROSA to switch managers within the Product
27 | Department.

28 |     43.    On or about February 19, 2024, CHRISTINA ROSA returned to work remotely.

1   CHRISTINA ROSA's very first meeting of the day was with Carlette Bell, who was
2   knowledgeable of all return accommodation requests (inclusive of multiple manager change
3   requests).   During this meeting with Carlette Bell, CHRISTINA ROSA was provided with a
4   written "Return to Work – 30 Day Plan," an unattainable and unrealistic return to work plan,
5   which CHRISTINA ROSA stated felt very much like a 'PIP' (Performance Improvement Plan) to
6   Carlette Bell.  CHRISTINA ROSA was further informed that her major responsibilities would be
7   that of Product Lead for the JAB (Jos. A. Bank) Squad.  After this meeting, CHRISTINA ROSA
8   had met with HR (which should have been her first meeting of the day).   During this call,
9   CHRISTINA ROSA reiterated a change of management request and that she felt retaliated against
10  by Carlette Bell since all return-to-work requests were viewed by Carlette Bell.   HR instructed
11  CHRISTINA ROSA to have a discussion with Carlette Bell and "try to make it work."

12      44.     On or about February 22, 2024, during a meeting with Carlette Bell to smooth
13  things over with her and address how CHRISTINA ROSA felt and what she experienced from her
14  management, Carlette Bell's response and tone was nothing short of rude, cold, and sarcastic.  No
15  display of managerial etiquette.  Despite this, CHRISTINA ROSA continued to push forward and
16  ask that the two of them to reach an "agreement" to "make it work."  CHRISTINA ROSA was
17  great at her job and needed her job, yet Carlette Bell was setting her up to fail.

18      45.     On or about April 3, 2024, CHRISTINA ROSA was seen by her treating physician
19  and was issued a script with the restriction of 40 hours per week maximum; work remotely from
20  her home; resume regular product management role; and would benefit from a change in manager
21  from a mental health standpoint.

22      46.     On or about April 10, 2024, CEO Peter Sachse provided CHRISTINA ROSA with
23  a FY23 (Fiscal Year 2023) Compensation Statement whereby her current annual salary of
24  $158,332 was increased to $161,498 effective March 24, 2024, for being "a valued employee."
25  CHRISTINA ROSA further received a Win Together Bonus (Since Company target was not met)
26  of $5,067 for a Total Cash Compensation (Base + Win Together Bonus Incentive) of $166,565.
27  This is further evidence of CHRISTINA ROSA's exemplary work and work ethic, yet HR and her
28  manager were clearly setting her up for failure.

47.     On or about April 19, 2024, CHRISTINA ROSA requested a "guided discussion" with Carlette Bell and Kristin Jackson on how she and Carlette Bell could work better together since CHRISTINA ROSA noticed no positive change or effort from Carlette Bell on their original agreement to "make it work" from their 2/22/24 meeting.

48.     In the morning of on or about May 1, 2024, CHRISTINA ROSA was once again seen by her treating physician who issued a script that CHRISTINA ROSA needs a managerial change and should be limited to 40 hours of work per week, due to her underlying medical condition(s) has/have been negatively affected by her current work environment and managerial oversight.   TAILORED BRANDS was ignoring her accommodations.   Later that afternoon CHRISTINA ROSA attended a meeting scheduled by Carlette Bell and HR.   This meeting turned into a 30-day PIP meeting whereby Carlette Bell advised CHRISTINA ROSA that, "We will meet each week to review your performance for that week and discuss what went well and areas of improvement. I will then be following up with an email after each discussion."   Immediately after this meeting, CHRISTINA ROSA attempted to communicate with VP of Digital Product, Kelly Helthall, via email, to discuss the ongoing issues she was experiencing and her shock of being placed on a PIP.   However, Kelly Helthall declined CHRISTINA ROSA's meeting request and plea for help.

49.     On or about May 6, 2024, CHRISTINA ROSA experienced a prolonged migraine from the stress of being placed on a PIP and HR and leadership not accommodating her requests. Thus, CHRISTINA ROSA's treating physician issued another script taking her off work until May 13, 2024.

50.     On or about May 14, 2024, via email, CHRISTINA ROSA expressed to Kristin Jackson that she was quite disappointed how TAILORED BRANDS did not address her concerns and displayed a lack of investigation into her many complaints (spanning over a year).   That having to revisit and reiterate all that she has shared with HR and leadership has only perpetuated and triggered her anxiety and PTSD.   Moreover, she further expressed that she felt set up to fail right from the beginning of her return to work.   The breadth, scope, and volume of the work assigned to her, to be completed during her first month back, was a blatant set up for failure.   Yet,

1  CHRISTINA ROSA jumped back in and immediately began working 70 plus hours a week upon

2  her return (weekends included) and delivered 100% for each of JAB's sprint releases.   These

3  concerns were also shared with Carlette Bell, that the workload was unattainable within the set

4  time-constraints.  CHRISTINA ROSA then provided a history of her many attempts addressing

5  her managerial concerns and multiple requests for a change in manager.  With all the efforts and

6  medically backed requests, nothing changed.  To be now placed on a PIP, just two weeks after her

7  last attempt to do her part in figuring out how to maintain a successful work relationship and

8  productive work output (the 'guided discussion') was blatant retaliation for complaining and pure

9  discrimination against her disabilities and medical leaves.

10     51.    On or about May 17, 2024, the Leave Department scheduled and met with

11  CHRISTINA ROSA for a meeting labeled "ADA Interactive Discussion."  As a result of the

12  meeting, CHRISTINA ROSA was placed on (forced) medical leave without her consent.

13     52.    On or about May 20, 2024, Kristin Jackson replied, "We have concluded looking

14  into your concerns about your supervisor and our Employee Relations team will follow up in

15  writing by the end of the week.  Your role is not being eliminated and we would like you back in

16  the role as soon as you're able."

17     53.    On June 4, 2024 CHRISTINA ROSA emailed MetLife extending her medical leave

18  through July 7, 2024, then again on June 24, 2024, CHRISTINA ROSA again emailed MetLife

19  her medical leave extension beginning July 7, 2024, through September 7, 2024.

20     54     Between on or about July 8, 2024, and August 25, 2024, CHRISTINA ROSA was

21  on approved continuous leave per MetLife.

22     55.    Between on or about August 26, 2024, and November 7, 2024, CHRISTINA

23  ROSA was on approved leave per MetLife.

24     56.    On or about August 30, 2024, CHRISTINA ROSA emailed MetLife her medical

25  leave extension beginning September 7, 2024, through November 7, 2024.

26     57.    On or about October 29, 2024, CHRISTINA ROSA's treating physician issued a

27  script that **CHRISTINA ROSA needs a leave from work from November 7, 2024 to January**

28  **7, 2025**.  Said script was directly provided to MetLife.

58.    On or about November 11, 2024, CHRISTINA ROSA received an overnight FedEx letter from TAILORED BRANDS stating, "We have been notified by our leave of absence claims administrator, MetLife, that you are able to return to an active status, but we have been unsuccessful in contacting you to coordinate your return. Please review the following requirements and **actions you need to take within 7 days from the date of this letter:** . . . **Failure to submit your Health Certification form, contact the Leaves Department to coordinate your return, or contact MetLife, will result in your employment being terminated effective 11/18/2024**."

59.    On or about November 19, 2024, CHRISTINA ROSA received an overnight FedEx letter from TAILORED BRANDS stating, "We have been notified by our leave of absence claims administrator, MetLife, that you are able to return to an active status, but we have been unsuccessful in contacting you to coordinate your return. Please review the following requirements and **actions you need to take within 5 days from the date of this letter:** . . . **Failure to submit your Health Certification form, contact the Leaves Department to coordinate your return, or contact MetLife, will result in your employment being terminated effective 11/24/2024**."

60.    On or about November 23, 2024, CHRISTINA ROSA called the Leave Department and left a voicemail message stating, to stop sending her threatening and harassing letters, and that MetLife has all the medical forms needed to support her medical leave.  This phone call was witnessed.

61.    On or about December 10, 2024, CHRISTINA ROSA received an overnight FedEx letter from TAILORED BRANDS stating, "We have been notified by our leave of absence claims administrator, MetLife, that you are able to return to an active status, but we have been unsuccessful in contacting you to coordinate your return. Please review the following requirements and **actions you need to take within 5 days from the date of this letter:** . . . **Failure to submit your Health Certification form, contact the Leaves Department to coordinate your return, or contact MetLife, will result in your employment being terminated effective 12/15/2024**."    Again, Ms. Rosa had already submitted the necessary paperwork to

1    MetLife. At all times, Ms. Rosa complaint in submitting the proper documentation to MetLife.

2    62.    On or about December 18, 2024, CHRISTINA ROSA received a "Notice of

3    Separation" from Tailored Shared Services, LLC, summarily terminating her employment,

4    effective December 16, 2024, without any stated reasons other than "DID NOT RETURN FROM

5    MEDICAL LEAVE OF ABSENCE." Despite being off work on approved medical leave issued

6    by her treating physicians, CHRISTINA ROSA was summarily terminated. CHRISTINA ROSA

7    was compelled to take medical leave on a full-time basis to heal and decompress from the hostile

8    work environment caused by TAILORED BRANDS. Between the time that CHRISTINA ROSA

9    was on medical leave and her return date, CHRISTINA ROSA made countless attempts to discuss

10   the ongoing issues concerning mistreatment and requests for reasonable accommodation with HR,

11   her former manager Kelly Helthall, and the Leave Department. However, CHRISTINA ROSA

12   was summarily and wrongfully terminated while on an approved leave.

13

14                              **FIRST CAUSE OF ACTION**
     **DISCRIMINATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON**
                    **PHYSICAL AND/OR MENTAL DISABILITY**

15   63.    Plaintiff realleges and incorporate by reference paragraphs 1-62, inclusive, as though

16   fully set forth herein.

17   64.    This is an action at law to recover damages for discrimination and unlawful

18   employment practices based on physical and/or mental disability (PTSD and chronic anxiety, IBS,

19   and major depressive disorder). Jurisdiction in this Court is invoked pursuant to California

20   Government Code §§ 12900, 12920, 12921, 12926, 12926.1, 12940, and 12965(b).

21   65.    Plaintiff alleges that she is a person protected by the California Fair Employment

22   and Housing Act and Government Code §§ 12900, 12920, 12921, 12926, 12940, and 12965(b);

23   *Barnett v. U.S. Air., Inc.* 228 F.3d 1105 (9th Cir. 2000), [U.S. cite]; *Prilliman v. United Air Lines,*

24   *Inc.* (1997) 53 Cal.App.4th 935, 950; *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245;

25   *Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128; and *Spitzer v. The Good*

26   *Guys* (2000) 80 Cal.App.4th 1376, in that Plaintiff objected and opposed the discrimination as

27   described in this Complaint.

28   66.    Plaintiff alleges that Defendant TAILORED BRANDS is not exempt by any local,

1  state, or federal statutes.  Plaintiff alleges that this includes the affirmative defense of Bona Fide

2  Occupational Qualification, etc.

3      67.     Plaintiff alleges that Defendant TAILORED BRANDS is an employer regularly

4  employing five or more persons within the meaning of Government Code § 12926.

5      68.     Defendant TAILORED BRANDS has ratified the discrimination against Plaintiff

6  due to her physical and mental disability and by failing to afford and provide her with equal

7  employment opportunities and the terms and conditions of employment that must be provided to

8  eligible or qualified employees.  Defendant ratified the acts of its employees and agents by

9  omission to act.

10     69.     Plaintiff believes that the available evidence, and such evidence as she will develop

11 through discovery and present at trial herein, indicates and will indicate that Defendant

12 discriminated and continues to discriminate against Plaintiff and other employees whom have a

13 physical and/or mental disability (PTSD and chronic anxiety, IBS, and major depressive disorder).

14 Plaintiff is uncertain if the form of discrimination is prevalent throughout TAILORED BRANDS,

15 or if it is an isolated "ad hoc" situation adversely affecting and impacting a protected class and

16 group of which Plaintiff is a member.  Because of the uncertainty, an individual member of the

17 affected group may bring an individual claim based on either theory.

18     70.     Notwithstanding the fact that Plaintiff was and is able to perform the essential

19 functions of her job duties as a Sr. Product Manager, which she had been performing or similar

20 roles without difficulty, Plaintiff alleges that the adverse action by Defendant TAILORED

21 BRANDS was pretextual designed to avoid contending with her health issues.  Defendant

22 TAILORED BRANDS instead provided Plaintiff with pretextual excuses for her separation and

23 adverse action given that Plaintiff invariably received favorable praises and accolades prior to the

24 adverse action alleged above.  Plaintiff believes that she was discriminated against simply due to

25 her physical and/or mental disability (PTSD and chronic anxiety, IBS, and major depressive

26 disorder).

27     71.     As a proximate result of the ongoing discrimination by Defendant TAILORED

28 BRANDS, Plaintiff was held up to great ridicule, all because of her physical and/or mental

1    disabilities described above. Plaintiff alleges that she was denied the opportunity to be treated

2    equally and fairly and employed by Defendant in the position she held, on account of bias,

3    prejudice and differential treatment against Plaintiff.

4         72.    Plaintiff was further held up to great ridicule and embarrassment with fellow

5    workers, friends, members of the community and family and suffered emotional distress because

6    Defendant demonstrated to Plaintiff that it would not recognize her physical and/or mental

7    disabilities. Defendants further acted intentionally and unreasonably with the recognition that its

8    conduct was likely to result in damages through mental distress.

9         73.    Plaintiff made numerous good faith reasonable attempts to discuss with

10   Defendant's supervisors, officials, and personnel management in order to retain her employment

11   free of discrimination and seek redress for the discrimination and other illegal conduct practiced

12   upon Plaintiff by Defendant TAILORED BRANDS, but the officials and personnel management

13   were not responsive to her petitions. The officials and personnel management declined to censure,

14   criticize, terminate, suspend, reverse any decisions, or otherwise take any action even after having

15   been informed of their conduct. Therefore, Plaintiff was forced to complain against the

16   Defendants before the California Civil Rights Department.

17        74.    By reason of the wrongful acts of the Defendant TAILORED BRANDS, as

18   hereinabove alleged, Plaintiff will be required to and will employ physicians, surgeons,

19   psychiatrists, and healthcare providers to examine, treat and care for her and will incur additional

20   medical expenses in an amount to be proven at the time of trial.

21        75.    As a further proximate result of the conduct of the Defendant TAILORED

22   BRANDS, Plaintiff suffered great emotional distress. Plaintiff is informed and believes and

23   thereon alleges that the injuries are not compensable under the Workers' Compensation Act and

24   are not a risk or condition of her employment. Because of the cold, callous and indifferent manner

25   in which the adverse action against Plaintiff was carried out; the deliberate and intentional refusal

26   to follow recognized local and state statutes; and Defendant's encouragement and condoning of

27   the unlawful practices, Plaintiff became distressed and upset and was caused to experience severe

28   emotional suffering and seeks damages for such mental and emotional distress in a sum according

1 | to proof at time of trial.

2 |      76.    By reason of the aforementioned acts, Plaintiff was prevented from attending to her
3 | usual occupation for a period in the future, which amount is not readily ascertainable and will
4 | thereby sustain further loss of earnings and benefits. Plaintiff further maintains that she will have
5 | difficulty finding comparable employment in her field and industry due to her blemished record
6 | that she was involuntarily separated. Plaintiff will therefore request leave of the court to amend
7 | this Complaint to state the amount of all such damages when they have been ascertained or upon
8 | proof at the time of trial.

9 |      77.    In bringing this action, Plaintiff has had to retain the services of the Law Offices of
10 | Joseph L. Alioto and Angela Alioto. Government Code § 12965(b) provides that the court may
11 | award reasonable attorney's fees and Plaintiff requests such fees to be ordered at the time of
12 | arbitration, trial or hearing thereafter.

13 |      78.    In doing the acts set forth above, Defendant knew that the systematic campaign and
14 | scheme to target Plaintiff based on the discriminatory protected basis was unlawful, illegal,
15 | malicious, without justification, unauthorized, unprivileged, wanton, despicable, with reckless
16 | disregard, oppressive, and with a conscious disregard for Plaintiff's Civil Rights motivated by
17 | pretextual reasons stated above, in violation of Plaintiff's fundamental Civil Rights. Defendant
18 | acted with malice because Defendant had no reasonable belief that its behavior was legitimate.
19 | Plaintiff's demand thereby warrants the assessment of punitive damages in a sum according to
20 | proof. Plaintiff will pray leave of the Court to amend this Complaint to state such amounts at the
21 | time they are ascertained, or according to proof at trial.

22 |
23 | **SECOND CAUSE OF ACTION**
**DISCRIMINATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON**
**FAILURE TO REASONABLY ACCOMMODATE IN GOOD FAITH**
24 |      79.    Plaintiff reallege and incorporate by reference paragraphs 1-62, inclusive, as though
25 | fully set forth herein.

26 |      80.    This is an action at law to recover damages for discrimination and unlawful
27 | employment practices based on denial of reasonable accommodation regarding physical and/or
28 | mental disabilities (PTSD and chronic anxiety, IBS, and major depressive disorder). Jurisdiction

1  in this Court is invoked pursuant to California Government Code §§ 12900, 12920, 12921,
2  12926(a), 12940, and 12965(b).

3        81.     Plaintiff alleges that she is a person protected by the California Fair Employment
4  and Housing Act and Government Code §§ 12900, 12920, 12921, 12926, 12940, and 12965(b);
5  *Barnett v. U.S. Air., Inc.* 228 F.3d 1105 (9th Cir. 2000), [U.S. cite]; *Prilliman v. United Air Lines,*
6  *Inc.* (1997) 53 Cal.App.4th 935, 950; *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245;
7  *Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128; and *Spitzer v. The Good*
8  *Guys* (2000) 80 Cal.App.4th 1376, in that Plaintiff was denied reasonable accommodation as
9  described in this Complaint.

10        82.     Plaintiff alleges that Defendant TAILORED BRANDS is not exempt by any local,
11  state, or federal statutes.  Plaintiff alleges that this includes the affirmative defense of Bona Fide
12  Occupational Qualification, etc.

13        83.     Plaintiff alleges that Defendant TAILORED BRANDS is an employer regularly
14  employing five or more persons within the meaning of Government Code § 12926.

15        84.     Plaintiff believes that the available evidence, and such evidence as she will develop
16  through discovery and present at trial herein, indicates and will indicate that Defendants failed and
17  refused to reasonably accommodate and continues to fail and refuse to reasonably accommodate
18  Plaintiff's physical and/or mental disabilities (PTSD and chronic anxiety, IBS, and major
19  depressive disorder).  Plaintiff is uncertain if the form of discrimination is prevalent throughout
20  Defendant TAILORED BRANDS, or if it is an isolated "ad hoc" situation adversely affecting and
21  impacting a protected class and group of which Plaintiff is a member.  Because of the uncertainty,
22  an individual member of the affected group may bring an individual claim based on either theory.

23        85.     Notwithstanding the fact that Plaintiff was and is able to perform the essential
24  functions of her job duties as a Sr. Product Manager, which she had been performing or similar
25  roles without difficulty, Plaintiff alleges that the adverse action by Defendant TAILORED
26  BRANDS was pretextual designed to avoid contending with her health issues.  Defendant
27  TAILORED BRANDS instead provided Plaintiff with pretextual excuses for her separation and
28  adverse action given that Plaintiff invariably received favorable praises and accolades prior to the

1  adverse action alleged above. Plaintiff believes that Defendants failed and refused to provide
2  reasonable accommodation associated with Plaintiff's physical and/or mental disability (PTSD and
3  chronic anxiety, IBS, and major depressive disorder) notwithstanding the fact that she could
4  continue working at Defendant without causing Defendant any unnecessary hardship. Plaintiff
5  alleges that the failure and refusal to reasonably accommodate by Defendants was pretextual in an
6  effort to avoid complying with its statutory obligation.

7      86.    As a proximate result of the failure and refusal to reasonably accommodate by
8  Defendant TAILORED BRANDS, Plaintiff was held up to great ridicule, all because of her
9  physical and/or mental disability described above. Plaintiff alleges that she was denied the
10  opportunity to be treated equally and fairly and employed by Defendant in the position she held,
11  on account of bias, prejudice and differential treatment against Plaintiff.

12      87.    Plaintiff was further held up to great ridicule and embarrassment with fellow
13  workers, friends, members of the community and family and suffered emotional distress because
14  Defendant demonstrated to Plaintiff that it would not recognize her request for reasonable
15  accommodation given her physical and/or mental disability. The Defendant further acted
16  intentionally and unreasonably with the recognition that its conduct was likely to result in
17  damages through mental distress.

18      88.    Plaintiff made numerous good faith reasonable attempts to discuss with
19  Defendant's supervisors, officials, and personnel management in order to retain her employment
20  free of discrimination and seek redress for the discrimination and other illegal conduct practiced
21  upon Plaintiff by Defendant TAILORED BRANDS, but the officials and personnel management
22  were not responsive to her petitions. The officials and personnel management declined to censure,
23  criticize, terminate, suspend, reverse any decisions, or otherwise take any action even after having
24  been informed of their conduct. Therefore, Plaintiff was forced to complain against Defendant
25  before the California Civil Rights Department.

26      89.    By reason of the wrongful acts of the Defendant TAILORED BRANDS, as
27  hereinabove alleged, Plaintiff will be required to and will employ physicians, surgeons,
28  psychiatrists, and healthcare providers to examine, treat and care for her and will incur additional

1 | medical expenses in an amount to be proven at the time of trial.

2 |      90.    As a further proximate result of the conduct of the Defendant TAILORED
3 | BRANDS, Plaintiff suffered great emotional distress.  Plaintiff is informed and believes and
4 | thereon alleges that the injuries are not compensable under the Workers' Compensation Act and
5 | are not a risk or condition of her employment.  Because of the cold, callous and indifferent manner
6 | in which the adverse action against Plaintiff was carried out; the deliberate and intentional refusal
7 | to follow recognized local and state statutes; Defendants encouraging the unlawful practices,
8 | Plaintiff became distressed and upset and was caused to experience severe emotional suffering and
9 | seeks damages for such mental and emotional distress in a sum according to proof at time of trial.

10 |      91.    Because of the aforementioned acts, Plaintiff was prevented from attending to her
11 | usual occupation for a period in the future, which amount is not readily ascertainable and will
12 | thereby sustain further loss of earnings and benefits.  Plaintiff further maintains that she will have
13 | difficulty finding comparable employment in her field and industry due to her blemished record
14 | that she was involuntarily separated.  Plaintiff will therefore request leave of the court to amend
15 | this Complaint to state the amount of all such damages when they have been ascertained or upon
16 | proof at the time of trial.

17 |      92.    In bringing this action, Plaintiff has had to retain the services of the Law Offices of
18 | Joseph L. Alioto and Angela Alioto.  Government Code § 12965(b) provides that the court may
19 | award reasonable attorney's fees and Plaintiff requests such fees to be ordered at the time of
20 | arbitration, trial or hearing thereafter.

21 |      93.    In doing the acts set forth above, Defendant knew that the systematic campaign and
22 | scheme to target Plaintiff based on the discriminatory protected basis was unlawful, illegal,
23 | malicious, without justification, unauthorized, unprivileged, wanton, despicable, with reckless
24 | disregard, oppressive, and with a conscious disregard for Plaintiff's Civil Rights motivated by
25 | pretextual reasons stated above, in violation of Plaintiff's fundamental Civil Rights.  Defendant
26 | acted with malice because Defendant had no reasonable belief that its behavior was legitimate.
27 | Plaintiff's demand thereby warrants the assessment of punitive damages in a sum according to

28

1    proof. Plaintiff will pray leave of the Court to amend this Complaint to state such amounts at the

2    time they are ascertained, or according to proof at trial.

3

4                                **THIRD CAUSE OF ACTION**
     **DISCRIMINATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON**
          **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN GOOD FAITH**

5         94.    Plaintiff realleges and incorporate by reference paragraphs 1-62, inclusive, as though

6    fully set forth herein.

7         95.    This is action at law to recover damages for discrimination and unlawful

8    employment practices based on failure and refusal to engage in the interactive process in good

9    faith in connection with Plaintiff's physical and/or mental disability (PTSD and chronic anxiety,

10   IBS, and major depressive disorder).  Jurisdiction in this Court is invoked pursuant to California

11   Government Code §§ 12900, 12920, 12921, 12926(a), 12940, and 12965(b).

12        96.    Plaintiff alleges that she is a person protected by the California Fair Employment

13   and Housing Act and Government Code §§ 12900, 12920, 12921, 12926, 12940, and 12965(b);

14   *Barnett v. U.S. Air., Inc.* 228 F.3d 1105 (9th Cir. 2000), [U.S. cite]; *Prilliman v. United Air Lines,*

15   *Inc.* (1997) 53 Cal.App.4th 935, 950; *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245;

16   *Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128; and *Spitzer v. The Good*

17   *Guys* (2000) 80 Cal.App.4th 1376, in that Defendant failed and refused to engage in the interactive

18   process in good faith in connection with Plaintiff's physical and/or mental disability as in this

19   Complaint.

20        97.    Plaintiff alleges that Defendant is not exempt by any local, state, or federal statutes.

21   Plaintiff alleges that this includes the affirmative defense of Bona Fide Occupational

22   Qualification, etc.

23        98.    Plaintiff alleges that Defendant is an employer regularly employing five or more

24   persons within the meaning of Government Code § 12926.

25        99.    Plaintiff believes that the available evidence, and such evidence as she will develop

26   through discovery and present at trial herein, indicates and will indicate that Defendant failed and

27   refused to engage in the interactive process in good faith with Plaintiff in connection with

28   Plaintiff's physical and/or mental disability (PTSD and chronic anxiety, IBS, and major depressive

1    disorder).   Plaintiff is uncertain if the form of discrimination is prevalent throughout TAILORED

2    BRANDS, or if it is an isolated "ad hoc" situation adversely affecting and impacting a protected

3    class and group of which Plaintiff is a member.  Because of the uncertainty, an individual member

4    of the affected group may bring an individual claim based on either theory.

5         100.   Notwithstanding the fact that Plaintiff was and is able to perform the essential

6    functions of her job duties as a Sr. Product Manager, which she had been performing this position

7    or  similar  roles  without  difficulty,  Plaintiff  alleges  that  the  adverse  action  by  Defendant

8    TAILORED  BRANDS  was  pretextual  designed  to  avoid  contending  with  her  health  issues.

9    Defendant  TAILORED  BRANDS  instead  provided  Plaintiff  with  pretextual  excuses  for  her

10   separation  and  adverse  action  given  that  Plaintiff  invariably  received  favorable  praises  and

11   accolades  prior  to  the  adverse  action  alleged  above.    Plaintiff's  request  for  accommodation

12   triggered  Defendant's  obligation  for  an  interactive  process  with  Plaintiff.    Plaintiff  believes  that

13   Defendants failed and refused to engage in the interactive process in good faith in connection with

14   Plaintiff's physical and/or mental disability (PTSD and chronic anxiety, IBS, and major depressive

15   disorder) notwithstanding the fact that she could continue working for Defendant without causing

16   Defendant any unnecessary hardship.   Plaintiff alleges that the failure and refusal to reasonably

17   engage in the interactive process in good faith by Defendant TAILORED BRANDS was pretextual in

18   an effort to avoid complying with its obligation.  The fact that the Company failed and refused to sit

19   down with her in good faith and engage in the interactive process and discuss viable options to

20   meet her disability challenges, **is an automatic violation per se of the FEHA**. (see Government

21   Code section 12940(n); *Nadaf-Rahrov v. Neiman Marcus* (2008) 166 Cal.App.4th 952, 981-987;

22   *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 950; *Jensen v. Wells Fargo Bank*

23   (2000) 85 Cal.App.4th 245; *Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128;

24   and *Spitzer v. The Good Guys* (2000) 80 Cal.App.4th 1376).  CHRISTINA ROSA believes and

25   alleges, though she repeatedly reached out to management to ameliorate the unlawful treatment,

26   TAILORED  BRANDS  failed  and  refused  to  engage  in  the  interactive  process  in  good  faith

27   personally  with  her  to  consider  her  requests  for  reasonable  accommodations  and  other  options

28   despite her repeated requests.  Had TAILORED BRANDS made the efforts and engaged in the

1  interactive process, CHRISTINA ROSA was prepared, ready, and willing to discuss and offer the

2  option of returning to work on a part time basis until her health improved; or perhaps continue to

3  work remotely from home as needed and like was hired to do; or have the flexibility of changing

4  her work schedule so that she could attend medical appointments; or work on a consulting basis so

5  that she could continue to contribute, etc.

6      101.  As a proximate result of the failure and refusal to reasonably engage in the

7  interactive process in good faith by Defendant TAILORED BRANDS, Plaintiff was held up to

8  great ridicule, all because of her physical and/or mental disability described above. Plaintiff

9  alleges that she was denied the opportunity to be treated equally and fairly and employed by

10 Defendant in the position she held, on account of bias, prejudice and differential treatment against

11 Plaintiff.

12     102.  Plaintiff was further held up to great ridicule and embarrassment with fellow

13 workers, friends, members of the community and family and suffered emotional distress because

14 Defendants demonstrated to Plaintiff that it would not reasonably engage in the interactive process

15 in good faith with regard to her physical and/or mental disability. The Defendant further acted

16 intentionally and unreasonably with the recognition that its conduct was likely to result in

17 damages through mental distress.

18     103.  Plaintiff made numerous good faith reasonable attempts to discuss with

19 Defendant's supervisors, officials, and personnel management in order to retain her employment

20 free of discrimination and seek redress for the discrimination and other illegal conduct practiced

21 upon Plaintiff by Defendant TAILORED BRANDS, but the officials and personnel management

22 were not responsive to her petitions. The officials and personnel management declined to censure,

23 criticize, terminate, suspend, reverse any decisions, or otherwise take any action even after having

24 been informed of their conduct. Therefore, Plaintiff was forced to complain against Defendants

25 before the California Civil Rights Department.

26     104.  By reason of the wrongful acts of the Defendant TAILORED BRANDS as

27 hereinabove alleged, Plaintiff will be required to and will employ physicians, surgeons,

28

1  psychiatrists, and healthcare providers to examine, treat and care for her and will incur additional
2  medical expenses in an amount to be proven at the time of trial.

3      105.    As a further proximate result of the conduct of the Defendant TAILORED
4  BRANDS, Plaintiff suffered great emotional distress.  Plaintiff is informed and believes and
5  thereon alleges that the injuries are not compensable under the Workers' Compensation Act and
6  are not a risk or condition of her employment.  Because of the cold, callous and indifferent manner
7  in which the adverse action against Plaintiff was carried out; the deliberate and intentional refusal
8  to follow recognized local and state statutes; Defendant encouraging the unlawful practices,
9  Plaintiff became distressed and upset and was caused to experience severe emotional suffering and
10 seeks damages for such mental and emotional distress in a sum according to proof at time of trial.

11     106.    By reason of the aforementioned acts, Plaintiff was prevented from attending to her
12 usual occupation for a period in the future, which amount is not readily ascertainable and will
13 thereby sustain further loss of earnings and benefits.  Plaintiff further maintains that she will have
14 difficulty finding comparable employment in her field and industry due to her blemished record
15 that she was involuntarily separated.  Plaintiff will therefore request leave of the court to amend
16 this Complaint to state the amount of all such damages when they have been ascertained or upon
17 proof at the time of trial.

18     107.    In bringing this action, Plaintiff has had to retain the services of the Law Offices of
19 Joseph L. Alioto and Angela Alioto.  Government Code § 12965(b) provides that the court may
20 award reasonable attorney's fees and Plaintiff requests such fees to be ordered at the time of
21 arbitration, trial or hearing thereafter.

22     108.    In doing the acts set forth above, Defendant knew that the systematic campaign and
23 scheme to target Plaintiff based on the discriminatory protected basis was unlawful, illegal,
24 malicious, without justification, unauthorized, unprivileged, wanton, despicable, with reckless
25 disregard, oppressive, and with a conscious disregard for Plaintiff's Civil Rights motivated by
26 pretextual reasons stated above, in violation of Plaintiff's fundamental Civil Rights.  Defendant
27 acted with malice because Defendant had no reasonable belief that its behavior was legitimate.
28 Plaintiff's demand thereby warrants the assessment of punitive damages in a sum according to

1   proof. Plaintiff will pray leave of the Court to amend this Complaint to state such amounts at the

2   time they are ascertained, or according to proof at trial.

3

4                          **FOURTH CAUSE OF ACTION**
    **RETALIATION AND UNLAWFUL EMPLOYMENT PRACTICES BASED ON**
    **COMPLAINING AND REPORTING DISCRIMINATION AND UNFAIR TREATMENT**

5          109.    Plaintiff reallege and incorporate by reference paragraphs 1-62, inclusive, as though

6   fully set forth herein.

7          110.    This is action at law to recover damages for violation of statutes and unlawful

8   employment practices.  Plaintiff alleges that she is a person protected by California laws, which

9   protect employees from retaliation, reprisal, and adverse action for complaining, reporting,

10  chronicling, and detailing her opposition of unfair treatment to upper management and individuals

11  of authority.  Jurisdiction in this court is invoked pursuant to, including, but without limitation,

12  California Government Code §§ 12900, et seq.; California Labor Code §§ 1102.5, et seq.;

13  California Constitution Article I, § 8; *Hentzel v. Singer Co.* (1982) 138 Cal.App.3d 290; and

14  *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028.  Specifically, an employer, or any person

15  acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy

16  preventing an employee from disclosing information to a person with authority over the employee,

17  or to another employee who has authority to investigate, if the employee has reasonable cause to

18  believe that the information discloses a violation of state or federal statute, or a violation of or

19  noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing

20  the information is part of the employee's job duties.  California Labor Code § 1102.5 is a pivotal

21  statute in protecting whistleblowers within the workplace, ensuring employees can report illegal

22  activities (e.g., individuals within protected basis of the FEHA) without fear of retaliation.  This

23  law fosters transparency and accountability by safeguarding individuals who disclose information

24  they reasonably believe evidence a violation of state or federal laws.

25         111.    Defendant TAILORED BRANDS has retaliated against Plaintiff due to her

26  complaints and reporting about discrimination, retaliation, and unfair treatment based on the stated

27  facts alleged above and by failing to afford and provide her with equal employment opportunities and

28

1  the terms and conditions of employment that must be provided to employees irrespective of
2  complaints and reporting.

3       112.   Plaintiff alleges that the unfair treatment was pretextual and not based on legitimate
4  business reasons.  Notwithstanding the fact that Plaintiff was and is able and competent to perform
5  the functions and job duties as a Sr. Product Manager or comparable position, TAILORED BRANDS
6  refused to continue with Plaintiff's employment simply due to her complaining and reporting about
7  unfair and discriminatory treatment, and hostile working environment.  The excuses given by
8  TAILORED BRANDS and its management concerning the reasons for terminating, was unlawful
9  and retaliatory.

10      113.   As a proximate result of said retaliation by Defendant, Plaintiff was held up to great
11  ridicule, all because of her complaints and reporting about discrimination and unfair treatment.
12  Plaintiff alleges that she was denied the opportunity to be treated equally and fairly and employed by
13  Defendant in the position she held, on account of bias, prejudice and differential treatment against
14  Plaintiff.

15      114.   Plaintiff was further held up to great ridicule and embarrassment with fellow workers,
16  friends, colleagues, members of the community and family and suffered emotional distress because
17  Defendants demonstrated to Plaintiff that they would not recognize her complaints and reporting
18  about discrimination, hostile working environment, and unfair treatment.  The Defendants further
19  acted intentionally and unreasonably with the recognition that their conduct was likely to result in
20  damages through mental distress.

21      115.   Plaintiff attempted numerous discussions with Defendant's executives, supervisors
22  and officials in order to retain her employment free of retaliation and discrimination and seek redress
23  for the discrimination and other illegal conduct practiced upon Plaintiff by Defendant, but said
24  officials and/or administration personnel were not responsive to her petitions.  Instead, HR abdicated
25  its role, responsibility, function, and position, and instructed CHRISTINA ROSA to have a
26  discussion with Carlette Bell and "try to make it work."  Said officials, personnel management and
27  others declined to censure, criticize, terminate, suspend, reverse any decisions, or otherwise take any
28  action even after having been informed of their conduct.

116.    CHRISTINA ROSA vehemently believes that the basis to support her termination of employment is pretextual and motivated by her constant complaining discussed above. CHRISTINA ROSA is the epitome and emblematic of what a hardworking employee aspires to be in her position. CHRISTINA ROSA is a strong product leader with strategic vision, strong execution, to everything she does.    She further fostered a culture of collaboration and open communication, creating an environment where team members felt empowered to take ownership and responsibility of their work. CHRISTINA ROSA's leadership style allowed everyone to feel valued, heard, and motivated to do their best work and delivered optimal products and customer experiences. CHRISTINA ROSA is highly skilled and accomplished at building and refining product processes to enhance efficiency and improve collaboration and communication with key stakeholders and partners.    CHRISTINA ROSA has been instrumental in team building for long-term success.    CHRISTINA ROSA was always available to provide guidance, advice, considerate and thoughtful feedback, and support. Team members always felt that she was approachable, skilled, and even referred to as 'sunshine' thereby creating an environment where they felt comfortable sharing thoughts, concepts, planning, and ideas. She was a loyal, high achieving and exemplary employee.

117.    By reason of the wrongful acts of the Defendant as hereinabove alleged, Plaintiff will be required to and will employ physicians and surgeons to examine, treat and care for her and will incur additional medical expenses in an amount to be proven at the time of trial.

118.    As a further proximate result of the conduct of the Defendant, Plaintiff suffered great emotional distress.    Plaintiff is informed and believes and thereon alleges that said injuries are not compensable under the Workers' Compensation Act and are not a risk or condition of her employment. Because of the cold, callous and indifferent manner in which Plaintiff's separation and termination was carried out; the deliberate and intentional refusal to follow recognized local and state statutes; Defendant encouraging the unlawful practices, Plaintiff became distressed and upset and was caused to experience severe emotional suffering and seeks damages for such mental and emotional distress in a sum according to proof at time of trial.

119.    By reason of the aforementioned retaliatory acts, Plaintiff was denied opportunities and promotions for a period in the future, which amount is not readily ascertainable and will

1  thereby sustain further loss of earnings.  Plaintiff further maintains that she will have difficulty

2  finding comparable employment in her field and industry due to her blemished record that she was

3  involuntarily separated.  Plaintiff will therefore request leave of the court to amend this Complaint

4  to state the amount of all such damages when they have been ascertained or upon proof at the time

5  of trial.

6      120.    Labor Code § 1102.5 (f) provides, "In addition to other penalties, an employer that

7  is a corporation or limited liability company is liable for a civil penalty not exceeding ten thousand

8  dollars ($10,000) for each violation of this section."  Accordingly, Plaintiff will be seeking a

9  demand for civil penalties.

10     121.    In bringing this action, Plaintiff has had to retain the services of the Law Offices of

11  Joseph L. Alioto and Angela Alioto.  Government Code § 12965(b) and Labor Code § 1102.5 (j)

12  provide that the court may award reasonable attorney's fees and Plaintiff requests such fees to be

13  ordered at the time of arbitration, trial or hearing thereafter.

14     122.    In doing the acts set forth above, Defendant knew that the conduct was willful,

15  wanton, despicable, malicious and cruel in conscious disregard of Plaintiff's rights to be free from

16  retaliation, reprisal and violations of public policy.  Defendant coddled and protected employees

17  known by it to be a misogynistic teammate, Shashaank Thota.  Defendant further protected Carlette

18  Bell whom had a blatant disregard and discriminatory attitude toward CHRISTINA ROSA's

19  disability and FMLA request.  Plaintiff's demand thereby warrants the assessment of punitive

20  damages against Defendant TAILORED BRANDS in a sum according to proof.  Plaintiff will pray

21  leave of the Court to amend this Complaint to state such amounts at the time they are ascertained, or

22  according to proof at trial.

23

24              **FIFTH CAUSE OF ACTION**
            **DISCRIMINATION BASED ON VIOLATION OF CFRA LEAVE**

25     123.    Plaintiff realleges and incorporates by reference paragraphs 1-62, inclusive, as

26  though fully set forth herein.

27     124.    This is an action at law to recover damages for discrimination and unlawful

28  employment practices on the basis of violations of the California Family Rights Act ("CFRA").

1  Jurisdiction in this Court is invoked pursuant to California Government Code §§ 12900, 12920,

2  12921, 12926, 12926.1, 12940, 12945.2 and 12965(b); and Cal. Code of Reg. § 7297.10.

3      125.    Plaintiff alleges that Defendant TAILORED BRANDS is not exempt by any local,

4  state or federal statutes.    Plaintiff alleges that this includes, but is not limited to, Bona Fide

5  Occupational Qualification, etc.    Plaintiff further alleges that Defendant TAILORED BRANDS

6  regularly employing fifty or more persons within the definition of § 12945.2 of the California

7  Government Code.

8      126.    Plaintiff alleges that she is a person protected by the California Fair Employment and

9  Housing Act and Government Code §§ 12900, 12920, 12921, 12926, 12926.1, 12940, 12945.2 and

10  12965(b); and Cal. Code of Reg. § 7297.10, in that Plaintiff has worked more than 1,250 hours in the

11  preceding twelve months and her need for medical leave of absence was due to PTSD and chronic

12  anxiety, IBS, and major depressive disorder as alleged above.    Defendant TAILORED BRANDS

13  discriminated against Plaintiff due to being denied or being harassed regarding medical leave of

14  absence as it relates to her PTSD and chronic anxiety, IBS, and major depressive disorder as alleged

15  above.

16      127.    Plaintiff believes that the evidence adduced in the investigation, and such evidence as

17  she will develop through discovery and present at trial herein, indicates and will indicate that

18  Defendant TAILORED BRANDS discriminated and continues to discriminate against Plaintiff and

19  other employees whom elect to request family care leave for themselves.    Plaintiff is of the

20  information and belief, however, uncertain if the form of discrimination, disparate impact and/or

21  desperate treatment, is prevalent throughout TAILORED BRANDS, or if it is an isolated "ad hoc"

22  situation adversely affecting and impacting a protected class and group of which Plaintiff is a

23  member.    Because of the uncertainty, an individual member of the affected group may bring an

24  individual claim based on these theories.

25      128.    As a proximate result of the interference with her substantive protections to take

26  medical leave, Plaintiff was held up to great ridicule all because of her request for leave described

27  above.  Plaintiff alleges that she was denied the opportunity to be treated equally and fairly and

28  employed by Defendant in the position she held, on account of bias, prejudice and differential

1  treatment against Plaintiff.

2      129.   Plaintiff was further held up to great ridicule and embarrassment with fellow workers,

3  friends, members of the community and family and suffered emotional distress because Defendant

4  TAILORED BRANDS demonstrated to Plaintiff that it would not recognize her right to take

5  protected leave of absence as prescribed by her treating physicians.

6      130. Defendant TAILORED BRANDS further acted intentionally and unreasonably with the

7  recognition that its conduct was likely to result in damages through mental distress.

8      131.   Plaintiff attempted to discuss her physical and mental difficulties with TAILORED

9  BRANDS's managers, supervisors and officials in order to retain her employment free of

10  discrimination and seek redress for the denial and refusal to take protected leave of absence and other

11  illegal conduct practiced upon Plaintiff by Defendant TAILORED BRANDS, but the Defendant was

12  unresponsive to her petitions and instead aggravated her disabilities by causing her health to worsen.

13  As a consequence, Plaintiff was forced to complain against the Defendant TAILORED BRANDS

14  before the California Civil Rights Department.

15      132.   By reason of the wrongful acts of the Defendant TAILORED BRANDS as

16  hereinabove alleged, Plaintiff was and will be further required to continue to employ physicians,

17  surgeons, psychiatrists and other healthcare providers to examine, treat and care for her and will

18  incur additional medical expenses in an amount to be proven at the time of trial.

19      133.   As a further proximate result of the conduct of the Defendant TAILORED

20  BRANDS, Plaintiff suffered great emotional distress.  Plaintiff is informed and believes and

21  thereon alleges that the injuries are not compensable under the Workers' Compensation Act and

22  are not a risk or condition of her employment.  Because of the cold, callous and indifferent manner

23  in which Plaintiff was treated; the deliberate and intentional refusal to follow recognized local and

24  state statutes; Defendant, TAILORED BRANDS encouraging and promoting the unlawful

25  practices, Plaintiff became distressed and upset and was caused to experience severe emotional

26  suffering and seeks damages for such mental and emotional distress in a sum according to proof at

27  time of trial.

28      134.   Because of the aforementioned acts, Plaintiff was prevented from attending to her

1 | usual occupation for a period in the future, which amount is not readily ascertainable and will

2 | thereby sustain further loss of earnings. Plaintiff further maintains that when she is eventually

3 | released to return to work by her treating physician, she will have difficulty finding comparable

4 | employment in her field and industry due to her blemished record that she was involuntarily

5 | separated. Plaintiff will therefore request leave of the court to amend this Complaint to state the

6 | amount of all such damages when they have been ascertained or upon proof at the time of trial.

7 | 135.    In bringing this action, Plaintiff has had to retain the services of the Law Offices of

8 | Joseph L. Alioto and Angela Alioto. Government Code § 12965(b) provides that the court may

9 | award reasonable attorney's fees and Plaintiff requests such fees to be ordered at the time of

10 | arbitration, trial or hearing thereafter.

11 | 136.    In doing the acts set forth above, Defendant knew that the systematic campaign and

12 | scheme to target Plaintiff based on the discriminatory protected basis was unlawful, illegal,

13 | malicious, without justification, unauthorized, unprivileged, wanton, despicable, with reckless

14 | disregard, oppressive, and with a conscious disregard for Plaintiff's Civil Rights motivated by

15 | pretextual reasons stated above, in violation of Plaintiff's fundamental Civil Rights. Defendant

16 | acted with malice because Defendant had no reasonable belief that its behavior was legitimate.

17 | Plaintiff's demand thereby warrants the assessment of punitive damages in a sum according to

18 | proof. Plaintiff will pray leave of the Court to amend this Complaint to state such amounts at the

19 | time they are ascertained, or according to proof at trial.

20

### SIXTH CAUSE OF ACTION
### BREACH OF THE IMPLIED-IN-FACT CONTRACT OF EMPLOYMENT

21

22 | 137.    Plaintiff realleges and incorporates by reference paragraphs 1, 3-8, 10-62, inclusive,

23 | as though fully set forth herein.

24 | 138.    During the entire course of Plaintiff's employment with TAILORED BRANDS there

25 | existed an implied-in-fact employment contract between Plaintiff and TAILORED BRANDS,

26 | which were based on and include, but not limited to, the following terms and conditions:

27 | a)    CHRISTINA ROSA, currently age 42, with over ten (10) years in the eCommerce

28 | and Digital Product Management space, a recipient of a Bachelor of Science degree in Art History

1  from the University of California at Berkeley; a recipient of a Masters FA in Merchandising and
2  Product Development from the Academy of Art University San Francisco; and Registered
3  SCRUM Master & Registered Product Owner, on September 24, 2021, received an Offer of
4  Employment letter welcoming her to the Company stating that her position would be titled
5  Product Manager eCommerce on the TAILORED BRANDS team with a pay rate of $150,000.00
6  yearly, with the Company's Annual Incentive Plan of 10%, working remotely.  On October 18,
7  2021, after accepting TAILORED BRANDS' Offer of Employment, CHRISTINA ROSA
8  officially began employment as a full-time salaried eCommerce Product Manager.  Accordingly,
9  based on the written employment agreement and her detrimental reliance that she would be joining
10 TAILORED BRANDS on a long-term basis, CHRISTINA ROSA accepted TAILORED
11 BRANDS's offer of employment; and reasonably intended and expected continued long-term
12 employment supported by the countless promises and representations made to her that she had a
13 future with TAILORED BRANDS.  Plaintiff further expected to retire from TAILORED BRANDS
14 based on her age (currently 42); and the representations by Plaintiff that she expected and intended to
15 remain with the Company and retire from TAILORED BRANDS.

16    b)    Plaintiff performed competently, efficiently, and professionally.    Plaintiff's
17 performance is supported by the salary increases, the numerous accolades and awards received from
18 the industry, and incentive bonuses earned and received; and the repeated assurances of lifetime
19 continued employment.

20    c)    Defendant TAILORED BRANDS employed certain written policies, practices,
21 assurances, and other statements, that Plaintiff had a contract of employment for an indefinite term
22 so long as she performed and carried out her duties in a proper and competent manner.  Moreover,
23 Plaintiff neither agreed nor acknowledged that she was an "at-will" employee subject to summary
24 termination with or without cause or Due Process.

25    d)    TAILORED BRANDS would not evaluate Plaintiff's performance in an arbitrary,
26 unfair, or capricious manner.

27    e)    TAILORED BRANDS would not summarily terminate Plaintiff unless based on
28 serious misconduct and after a good faith reasonable investigation.

1    f)    TAILORED BRANDS would not unilaterally and materially change terms and
2    conditions and benefits of Plaintiff's employment without applying the same standards and rules to
3    other employees.

4    g)    That Plaintiff would not be summarily discharged, or otherwise disciplined other than
5    for good cause without notice, warnings, counseling, progressive discipline, or due process.

6    h)    If grievances or complaints were lodged regarding Plaintiff's performance, she would
7    be entitled to adequate notice and a meaningful opportunity to respond and/or improve, and a
8    thorough investigation.

9    139.    Plaintiff alleges that the Defendant TAILORED BRANDS breached the implied-in-
10    fact contract because TAILORED BRANDS sought to terminate Plaintiff without any relation to
11    her performance or allegations of misconduct.    Plaintiff had an expectation of continued
12    employment with termination only for good cause proven based upon the causes identified in the
13    policies and not on pretextual excuses.

14    140.    Plaintiff further alleges that Defendant TAILORED BRANDS was required by the
15    implied-in-fact employment contract to refrain from violating written promises and representations it
16    had made to Plaintiff and its employees consisting of its own regulations and the assurances stated
17    herein.    The above said acts of TAILORED BRANDS constituted a breach of the implied-in-fact
18    employment contract in that Plaintiff was summarily terminated from her employment with the
19    TAILORED BRANDS based on pretextual excuses in that the TAILORED BRANDS was motivated
20    to take adverse action against Plaintiff because of her repeated and frequent complaining, reporting,
21    and whistleblowing efforts alleged above.

22    141.    By reason of the aforementioned acts, Plaintiff was prevented from attending to her
23    usual occupation for a period in the future, which amount is not readily ascertainable and will thereby
24    sustain further loss of earnings and benefits.    Plaintiff further maintains that she will have difficulty
25    finding comparable employment in her field and industry due to her blemished record that she was
26    involuntarily separated.    Plaintiff will therefore request leave of the court to amend this Complaint to
27    state the amount of all such damages when they have been ascertained or upon proof at the time of
28    trial.

**SEVENTH CAUSE OF ACTION**
**FAILURE TO PAY OVERTIME WAGES**

142.     Plaintiff repeats and realleges paragraphs 1, 3-8, 10, 12-17, 26-28, 31, 37, and 46, and incorporates the same as though fully set forth at length.

143.     This is an action at law to recover unpaid overtime wages, and other unpaid compensation.  Jurisdiction in this Court is invoked pursuant to California Labor Code §§ 200, 202, 204, 216, 218, 218.5, 218.6, 226.7, 510, 558.1, 1194, and 1198; and *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785.

144.     "[A]ny employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime, including interest thereon, reasonable attorney's fees, and costs of suit." (Lab. Code § 1194, subd. (a).) Further, "an employer shall keep accurate information with respect to each employee including [...] [t]ime records showing when the employee begins and ends each work period. [...] [T]otal daily hours worked shall also be recorded." (Cal. Code Regs., tit. 8, § 11040, subd. (7)(A)(3).) "Where the employer has failed to keep records required by statute, [...] imprecise evidence by the employee can provide a sufficient basis for damages." (*Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 961.)

145.     Moreover, as the employer, TAILORED BRANDS has the obligation and responsibility to maintain full and accurate personnel and time records for three years (see Labor Code § 1174; Cal. Code Regs., tit. 8, § 11050, subd. 7(A)(3)).  Furthermore, as the employer, TAILORED BRANDS has the burden of disproving that Plaintiff did not work the hours she is claiming.  The United States Supreme Court decided in *Anderson v. Mt. Clemens Pottery Co.* (1945) 328 U.S. 680, 688 [90 L.Ed. 1515, 1523], 66 S.Ct. 1187, that where the **employer** has failed to keep **records** required by statute, the consequences for such failure should fall on the **employer,** not the employee.  In such a situation, imprecise evidence by the employee can provide a sufficient basis for damages. (see *Reeves v. International Tel. & Tel. Corp.* (9th Cir. 1980) 616 F.2d 1342, 1351; *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 961.)  In other words, where the employer has failed to maintain accurate time records, the employee's own statement of time worked will be evidence against the employer.   Given that TAILORED

1 | BRANDS failed to keep accurate records of CHRISTINA ROSA's hours worked, her reasonable
2 | estimate of hours is sufficient to substantiate her claim.

3 | 146.    On or about July 19, 2022, VP Digital Product Kelly Helthall provided
4 | CHRISTINA ROSA with a "Compensation Change" adjustment letter due to her role shifting
5 | from a management position to an individual contributor and new job title of Sr. Product Manager.
6 | Specifically, her current base salary of $153,690 and Bonus Target $18,443 (12%) would change
7 | to $156,764 with a Bonus Target of $15,676 (10%), effective July 24, 2022. CHRISTINA ROSA
8 | would continue in her non-exempt position with no supervisory or management authority of any
9 | subordinate employees.  Between October 18, 2021, through December 16, 2024, CHRISTINA
10 | ROSA worked 30 hours of overtime per week.    Accordingly, as a non-exempt employee,
11 | CHRISTINA ROSA is entitled to overtime pay in the sum of **$572,983.20** [$77.64 per hour +
12 | $38.82 (1½) = $116.46 per hour X 30 hours OT per week X 164 weeks (10/18/2021 –
13 | 12/16/2024)].

14 | 147.    CHRISTINA ROSA alleges that she routinely worked daily in excess of eight
15 | hours and those work hours were not compensated at her overtime rate.  As such, TAILORED
16 | BRANDS is liable for unpaid straight time wages and overtime wages in a sum according to
17 | proof.

18 | 148.    As a proximate result of the refusal to pay Plaintiff's straight and overtime time
19 | wages, Plaintiff is entitled to straight and overtime time wages in a sum of according to proof.  As
20 | a further proximate result of the refusal to pay Plaintiff's straight time wages, Plaintiff is entitled
21 | to an award of waiting time penalties for thirty (30) days pursuant to Labor Code Section 203.
22 | Also, as a further proximate result of the refusal to pay Plaintiff's straight time wages, Plaintiff is
23 | entitled to an award of interest pursuant to Labor Code Section 218.6 in an amount to be proven at
24 | trial.

25 | 149.    In addition to her claim for wages, Plaintiff is also entitled to an annual simple
26 | interest on all unpaid wages of 10%. (*See* Labor Code § 1194, Civil Code § 3289) in an amount to
27 | be proven at trial.

28 | 150.    In bringing this action, Plaintiff has had to retain the services of the Law Offices of

1    Joseph L. Alioto and Angela Alioto.  This pleading shall serve as notice that Plaintiff intends on

2    seeking and recovering reasonable attorney's fees pursuant to Labor Code §§ 98.2, 218.5 and 1194

3    which provides that the court may award reasonable attorney's fees and costs and Plaintiff

4    requests such fees to be ordered at the time of arbitration, trial or hearing thereafter.

**EIGHT CAUSE OF ACTION**
**FAILURE TO PAY PREMIUM WAGES FOR MISSED 30 MINUTE**
**DUTY-FREE MEAL PERIODS**
**(Pursuant to Labor Code § 226.7)**

151.    Plaintiff repeats and realleges paragraphs 1, 3-8, 10, 12-17, 26-28, 31, 37, and 46, and incorporates the same as though fully set forth at length.

152.    This is an action at law to recover unpaid earnings while working during meal periods or denied and/or interrupted.  Jurisdiction in this Court is invoked pursuant to California Labor Code §§ §§ 200, 202, 204, 216, 218, 218.5, 218.6, 226.7, 510, 558.1, 1194, and 1198; and *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785.  At all times herein set forth, the IWC Wage Order applicable to Plaintiff's employment by Defendant provides as follows:

"11.    **Meal Periods**

(A)    No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.  Unless the employee is relieved of all duty during a 30-minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked.  An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to.  The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(B)    If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided."

153.    An employer shall not require an employee to work during a meal period. (Lab.

1  Code § 226.7, subd. (a).)  Failure to provide a meal period in accordance with state law requires

2  the employer to pay "the employee one additional hour of pay at the employee's regular rate of

3  compensation for each workday the meal [...] period is not provided." (*Id*. at subd. (b).)  In order

4  to comply with its meal period obligation, an employer must relieve the employee of all duty,

5  relinquish control over their activities and permit them a reasonable opportunity to take an

6  uninterrupted 30-minute break. (*Brinker Restaurant Corp. v. Superior Court*, (2012) 53 Cal. 4th

7  1004, 1040.)

8    154.    Further, "an employer shall keep accurate information with respect to each

9  employee including [...] [t]ime records showing when the employee begins and ends each work

10  period. Meal periods [...] shall also be recorded." (Cal. Code Regs., tit. 8, § 11040, subd.

11  (7)(A)(3).) "Where the employer has failed to keep records required by statute, [...] imprecise

12  evidence by the employee can provide a sufficient basis for damages." (*Cicairos v. Summit*

13  *Logistics, Inc.* (2005) 133 Cal.App.4th 949, 961.)

14    155.    On or about July 19, 2022, VP Digital Product Kelly Helthall provided

15  CHRISTINA ROSA with a "Compensation Change" adjustment letter due to her role shifting

16  from a management position to an individual contributor and new job title of Sr. Product Manager.

17  Specifically, her current base salary of $153,690 and Bonus Target $18,443 (12%) would change

18  to $156,764 with a Bonus Target of $15,676 (10%), effective July 24, 2022.  CHRISTINA ROSA

19  would continue in her non-exempt position with no supervisory or management authority of any

20  subordinate employees.  Between October 18, 2021, through December 16, 2024, CHRISTINA

21  ROSA reasonably estimates that she worked fourteen (14) hours daily and was invariably

22  prevented from taking a 30 minute duty-free uninterrupted lunch.  CHRISTINA ROSA further

23  alleges that she either did not take her daily lunch periods or they were simply interrupted on a

24  constant and daily basis.

25    156.    CHRISTINA ROSA alleges that TAILORED BRANDS failed to provide her with

26  30-minute duty free meal breaks.  Furthermore, because TAILORED BRANDS failed to keep

27  accurate records, CHRISTINA ROSA's reasonable estimates are sufficient to prove her damages.

28  As such, TAILORED BRANDS is liable for compensation for failure to provide meal periods

1  and/or without interruption.  Based on the daily duties and tasks performed by CHRISTINA
2  ROSA as discussed above, CHRISTINA ROSA cannot simply meet the test as a matter of law for
3  an "exempt" employee pursuant to California's IWC Order No. 4-2001.  As such, CHRISTINA
4  ROSA is owed one hour of wages for each day she was not able to take a 30-minute duty-free
5  meal (or, if applicable, two meals where she worked ten hours per day).   Accordingly,
6  CHRISTINA ROSA is owed **$63,664.80** in meal break premiums [1.0-hour X $77.64 hourly rate
7  ($161,498 annual salary ÷ 52 weeks = $3,105.73 weekly ÷ 40 hours weekly = $77.64 hourly rate)
8  X 820 days (52 + 52 + 60 = 164 total five-day work weeks or 10/18/2021 – 12/16/2024)].  Please
9  note that this excludes two meals where she worked ten hours per day. (see Labor Code § 226.7,
10  subd. (a); and *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4[th] 1004, 1040.)

11  157.  In addition to her claim for wages, Plaintiff is also entitled to an annual simple
12  interest on all unpaid wages of 10% (*See* Labor Code §§ 226.7 & 1194, Civil Code § 3289) in a
13  sum of according to proof at time of trial.

14  158.  In bringing this action, Plaintiff has had to retain the services of the Law Offices of
15  Joseph L. Alioto and Angela Alioto.  This pleading shall serve as notice that Plaintiff intends on
16  seeking and recovering reasonable attorney's fees pursuant to Labor Code §§ 98.2, 218.5 and 1194
17  which provides that the court may award reasonable attorney's fees and costs and Plaintiff
18  requests such fees to be ordered at the time of arbitration, trial or hearing thereafter.

19
20                            **NINTH CAUSE OF ACTION**
                      **FAILURE TO PAY PREMIUM WAGES FOR MISSED 10 MINUTE**
                              **DUTY-FREE REST PERIODS**
21                            **(Pursuant to Labor Code § 226.7)**
22  159.  Plaintiff repeats and realleges paragraphs 1, 3-8, 10, 12-17, 26-28, 31, 37, and 46,
23  and incorporates the same as though fully set forth at length.

24  160.  This is an action at law to recover unpaid earnings while working during rest
25  periods or denied and/or interrupted.  Jurisdiction in this Court is invoked pursuant to California
26  Labor Code §§ §§ 200, 202, 204, 216, 218, 218.5, 218.6, 226.7, 510, 558.1, 1194, and 1198; and
27  *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4[th] 785.  At all times herein set forth, the IWC Wage
28  Order applicable to Plaintiff's employment by Defendant provides as follows:

"12.    **Rest Periods**

(A)    Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages."

161.    If an employer fails to provide an employee with a rest period mandated by law, the employer must pay to that employee an hour of pay at that employee's regular rate of pay for each day a rest period was not provided. (Lab. Code § 226.7.) An employer's obligation as it relates to rest periods is to "*authorize* and permit all employees to take rest periods [...] at the rate of ten (10) minutes net rest time per four hours or major fraction thereof." (Cal. Code Regs., tit. 8, § 11050, subd. (12)(A) (emphasis added); *see also Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 269 (best construction of Wage Order, subdivision 12(A) is that it "obligates employers to permit – *and authorizes employees to take* – off-duty rest periods") (emphasis added).)

162.    CHRISTINA ROSA alleges that she routinely was required to work at all times without taking rest periods. Therefore, CHRISTINA ROSA did not receive a compliant rest break any day that she worked four hours or a major fraction thereof, and she is entitled to a rest break premium equal to one hour of wages at her regular rate of pay for each day she did not receive one. As such, TAILORED BRANDS is liable for compensation for failure to provide rest periods and/or without interruption. As such, CHRISTINA ROSA is owed **$63,664.80** in rest breaks premiums [one per day or 1.0-hour X $77.64 hourly rate ($161,498 annual salary ÷ 52 weeks = $3,105.73 weekly ÷ 40 hours weekly = $77.64 hourly rate) X 820 days (52 + 52 + 60 = 164 total five-day work weeks or 10/18/2021 – 12/16/2024)]. Please note that this excludes rest breaks where she worked ten hours per day and Saturdays. (see Labor Code § 226.7.)

163.    In addition to her claim for wages, Plaintiff is also entitled to an annual simple interest on all unpaid wages of 10% (*See* Labor Code §§ 226.7 & 1194, Civil Code § 3289) in a

1   sum of according to proof at time of trial.

2       164.    In bringing this action, Plaintiff has had to retain the services of the Law Offices of

3   Joseph L. Alioto and Angela Alioto.  This pleading shall serve as notice that Plaintiff intends on

4   seeking and recovering reasonable attorney's fees pursuant to Labor Code §§ 98.2, 218.5 and 1194

5   which provides that the court may award reasonable attorney's fees and costs and Plaintiff

6   requests such fees to be ordered at the time of arbitration, trial or hearing thereafter.

7
                            **TENTH CAUSE OF ACTION**
8           **FAILURE TO PROVIDE ACCURATE WAGE STATEMENT**
                        **(Pursuant to Labor Code § 226)**
9       165.    Plaintiff repeats and realleges paragraphs 1, 3-8, 10, 12-17, 26-28, 31, 37, and 46,

10  and incorporates the same as though fully set forth at length.

11      166.    This is an action at law to recover for failure to provide accurate wage statements.

12  Jurisdiction in this Court is invoked pursuant to California Labor Code § 226, subd. (e) which

13  provides: "An employer, semimonthly or at the time of each payment of wages, shall furnish to his

14  or her employee, [...] an accurate itemized statement in writing showing [*inter alia*] [...] (2) total

15  hours worked by the employee, [...] and (9) all applicable hourly rates in effect during the pay

16  period and the corresponding number of hours worked at each hourly rate by the employee[.]"

17  (Lab. Code § 226, subd. (a).)  Where an employee "cannot promptly and easily determine from the

18  wage statement alone [...] information to be provided on the itemized wage statement pursuant to

19  items (2) to (4), inclusive, and (9) of subdivision (a)," that employee has suffered "an injury."

20  (Labor Code § 226.7, subd. (e).)  Such an employee "is entitled to recover the greater of all actual

21  damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one

22  hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed

23  four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

24  (*Id.*)

25      167.    Plaintiff alleges that none of her wage statements contained the total hours she

26  worked, or the applicable rates of pay for each hour worked.  Accordingly, Plaintiff is entitled to

27  the wage statement penalty in a sum of according to proof at time of trial.

28      168.    In bringing this action, Plaintiff has had to retain the services of the Law Offices of

1  Joseph L. Alioto and Angela Alioto. This pleading shall serve as notice that Plaintiff intends on

2  seeking and recovering reasonable attorney's fees pursuant to Labor Code § 226, subdiv. (e)(1),

3  which provides that the court may award reasonable attorney's fees and costs and Plaintiff

4  requests such fees to be ordered at the time of arbitration, trial or hearing thereafter.

5  **PRAYER FOR RELIEF**

6  WHEREFORE, Plaintiff CHRISTINA ROSA prays for judgment against the Defendant as

7  follows:

8  **AS TO THE FIRST CAUSE OF ACTION:**

9  1. For general damages in a sum according to proof;

10  2. For special damages in a sum according to proof;

11  3. For attorney's fees and costs in a sum according to proof; and

12  4. For punitive damages in a sum according to proof.

13  **AS TO THE SECOND CAUSE OF ACTION:**

14  1. For general damages in a sum according to proof;

15  2. For special damages in a sum according to proof;

16  3. For attorney's fees and costs in a sum according to proof; and

17  4. For punitive damages in a sum according to proof.

18  **AS TO THE THIRD CAUSE OF ACTION:**

19  1. For general damages in a sum according to proof;

20  2. For special damages in a sum according to proof;

21  3. For attorney's fees and costs in a sum according to proof; and

22  4. For punitive damages in a sum according to proof.

23  **AS TO THE FOURTH CAUSE OF ACTION:**

24  1. For general damages in a sum according to proof;

25  2. For special damages in a sum according to proof;

26  3. For attorney's fees and costs in a sum according to proof; and

27  4. For punitive damages in a sum according to proof.

28

**AS TO THE FIFTH CAUSE OF ACTION:**

  1. For general damages in a sum according to proof;

  2. For special damages in a sum according to proof;

  3. For attorney's fees and costs in a sum according to proof; and

  4. For punitive damages in a sum according to proof.

**AS TO THE SIXTH CAUSE OF ACTION:**

  1. For general damages in a sum according to proof.

**AS TO THE SEVENTH CAUSE OF ACTION:**

  1. For general damages in a sum according to proof;

  2. For straight and overtime time wages in a sum according to proof;

  3. For an award of waiting time penalties for thirty (30) days pursuant to Labor Code Section 203 in a sum according to proof;

  4. For an award of interest pursuant to Labor Code Section 218.6 in a sum according to proof;

  5. For annual simple interest on all unpaid wages of 10% pursuant to Labor Code §§ 226.7 & 1194, Civil Code § 3289 in a sum according to proof; and

  6. For reasonable attorney's fees and costs pursuant to Labor Code §§ 98.2, 218.5 and 1194 in a sum according to proof.

**AS TO THE EIGHT CAUSE OF ACTION:**

  1. For meal break premiums in a sum according to proof;

  2. For an award of waiting time penalties for thirty (30) days pursuant to Labor Code Section 203 in a sum according to proof;

  3. For an award of interest pursuant to Labor Code Section 218.6 in a sum according to proof;

  4. For annual simple interest on all unpaid wages of 10% pursuant to Labor Code §§ 226.7 & 1194, Civil Code § 3289 in a sum according to proof; and

  5. For reasonable attorney's fees and costs pursuant to Labor Code §§ 98.2, 218.5 and 1194 in a sum according to proof.

**AS TO THE NINTH CAUSE OF ACTION:**

    1.  For rest break premiums in a sum according to proof;

    2.  For an award of waiting time penalties for thirty (30) days pursuant to Labor Code Section 203 in a sum according to proof;

    3.  For an award of interest pursuant to Labor Code Section 218.6 in a sum according to proof;

    4.  For annual simple interest on all unpaid wages of 10% pursuant to Labor Code §§ 226.7 & 1194, Civil Code § 3289 in a sum according to proof; and

    5.  For reasonable attorney's fees and costs pursuant to Labor Code §§ 98.2, 218.5 and 1194 in a sum according to proof.

**AS TO THE TENTH CAUSE OF ACTION:**

    1.  For penalties for noncompliance with her wage statements in a sum according to proof; and

    2.  For reasonable attorney's fees and costs pursuant to Labor Code §§ 98.2, 218.5 and 1194 in a sum according to proof.

**AS TO ALL CAUSES OF ACTION:**

    1.  For cost of suit herein incurred

    2.  For such other and further relief as the Court may deem just and proper; and

    3.  Plaintiff hereby demand a jury trial on all issues and causes of action in the above entitled action.

DATED: July 8 _, 2025

                                **LAW OFFICES OF JOSEPH L. ALIOTO AND ANGELA ALIOTO**

                                Angela M. Alioto, Esq.
                                Angela Mia Veronese, Esq.
                                Attorneys for Plaintiff CHRISTINA ROSA



# Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Information Package



The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

## WHY CHOOSE ADR?

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**\*\*Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint\*\***

## WHAT ARE THE ADR OPTIONS?

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

## 1) MANDATORY SETTLEMENT CONFERENCES

Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

**(B) JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**(D) COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

## 3)  ARBITRATION

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

### (A) JUDICIAL ARBITRATION

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

### (B) PRIVATE ARBITRATION

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
adrcoordinator@sftc.org
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. <u>YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.</u>

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name *and address*) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:<br><br>ATTORNEY FOR *(Name):* | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO<br>400 McAllister Street<br>San Francisco, CA 94102-4514 | |
|---|---|
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: _____ |
|---|---|
| | DEPARTMENT 610 |

**1)    The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐    **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of$295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐    **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐    **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐    **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. https://sf.courts.ca.gov/divisions/civil-division/alternative-dispute-resolution

☐    **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. https://sf.courts.ca.gov/ divisions/civil-division/alternative-dispute-resolution

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days ☐   90-120 days ☐   Other (please specify) _____

☐    Other ADR process (describe) _____

**2)    The parties agree that the ADR Process shall be completed by (date): _____**
**3)    Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

| _____ | _____ |
|---|---|
| Name of Party Stipulating | Name of Party Stipulating |
| _____ | _____ |
| Name of Party or Attorney Executing Stipulation | Name of Party or Attorney Executing Stipulation |
| _____ | _____ |
| Signature of Party or Attorney | Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐  *Additional signature(s) attached*

ADR-2   04/24                    **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**



**Superior Court of California, County of San Francisco**
**Information Sheet**
**Voluntary Expedited Jury Trial Summary**

The San Francisco Superior Court encourages the use of Voluntary Expedited Jury Trials ("EJTs") in appropriate cases. EJTs provide an excellent opportunity to resolve your client's case in an expeditious and inexpensive way. Voluntary EJTs are authorized by statute. CCP §§ 630.01.

EJTs can resolve your entire case **or** a single important case critical issue that, once adjudicated, can promote resolution of the entire case (for example: course and scope of employment, causation of an injury, whether a contract was formed, etc.) EJTs promote equal access to civil justice as they are less expensive, consume fewer courtroom days, provide flexibility throughout, encourage high/low agreements to limit risk, and feature streamlined pre-trial procedures.

These are highlights of an EJT (C.C.P. §§ 630.01 et seq. and Rules of Court 3.1549 - 3.1553):

- Parties encouraged to submit a joint jury questionnaire;

- 8 jurors (6 must agree);

- 3 peremptory challenges per side;

- 5-hour time limit per side <u>unless agreed otherwise and approved;</u>

- One to two court days completion <u>unless agreed otherwise and approved;</u>

- Option to present evidence by stipulation and objection;

- High/low arrangement option;

- Limited appeal (misconduct by judge or jury substantially affecting parties' rights or corruption, or bad faith.)

If the parties agree to the Voluntary EJT, they should file and serve the completed and signed (Proposed) Consent Order for Voluntary Expedited Jury Trial, Judicial Council Form EJT-020.

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

| | |
|---|---|
| **DATE:** | **NOV 26, 2025** |
| **TIME:** | **10:30 am** |
| **PLACE:** | **Department 610** |
| | **400 McAllister Street** |
| | **San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order  **without an appearance**  at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.  **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at https://sf.courts.ca.gov under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION,  AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

**(SEE LOCAL RULE 4)**

Plaintiff  **must**  serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint. (CRC 3.221.) The ADR package may be accessed at https://sf.courts.ca.gov/divisions/civil-division/alternative-dispute-resolution or you may request a paper copy from the filing clerk.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400  McAllister Street, Room 103-A**
**San Francisco, CA  94102**
**adrcoordinator@sftc.org**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

# EXHIBIT C

1   Benjamin J. Schnayerson (State Bar No. 257857)
    Liam N. Gaarder-Feingold (State Bar No. 345747)
2   JACKSON LEWIS P.C.
    50 California Street, 9th Floor
3   San Francisco, California 94111-4615
    Telephone:  (415) 394-9400
4   Facsimile:  (415) 394-9401
    E-mail:  Ben.Schnayerson@jacksonlewis.com
5   E-mail:  Liam.Gaarderfeingold@jacksonlewis.com

6   Attorneys for Defendant
    TAILORED SHARED SERVICES, LLC.
7   [erroneously sued as TAILORED SHARED
    SERVICES, LLC dba TAILORED BRANDS,
8   INC.]

9                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                         COUNTY OF SAN FRANCISCO

11

12
    CHRISTINA ROSA,                          Case No. CGC-25-626353
13
              Plaintiff,                     **DEFENDANT'S ANSWER TO FIRST**
14                                           **AMENDED COMPLAINT FOR**
          v.                                 **DAMAGES**
15
    TAILORED SHARED SERVICES, LLC dba
16  TAILORED BRANDS, INC., and DOES 1        Complaint Filed:    06/23/2025
    through 10, inclusive,                   FAC Filed:          07/08/2025
17                                           Trial Date:         Not set
              Defendants.
18

19

20        Defendant TAILORED SHARED SERVICES, LLC [erroneously sued as TAILORED

21  SHARED SERVICES, LLC dba TAILORED BRANDS, INC.] ("Defendant"), answers Plaintiff

22  CHRISTINA ROSA's ("Plaintiff") Unverified Complaint (the "Complaint") as follows:

23                              **GENERAL DENIAL**

24        Pursuant to California Code of Civil Procedure section 431.30(d), Defendant generally

25  denies every allegation contained in the Complaint.  Defendant further denies that Plaintiff has

26  been injured by any act or omission by Defendant, or that Plaintiff is entitled to any relief

27  whatsoever.

28  ///

                                      1

**AFFIRMATIVE DEFENSES**

Defendant asserts the following affirmative defenses to the Complaint, but does not assume the burden of proof of any such defense except as required by applicable law.  Defendant reserves the right to assert additional defenses or otherwise supplement this Answer upon discovery of facts or evidence rendering such action appropriate.

**FIRST AFFIRMATIVE DEFENSE**

*Failure to State a Claim*

Plaintiff's Complaint, and each purported cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against Defendant for which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

*Statute of Limitations*

The causes of action in Plaintiff's Complaint are barred to the extent they are based on claims barred by applicable statutes of limitations, including, but not limited to, those set forth in California Code of Civil Procedure sections 335.1, 337, 338, 339, 340, and 343; Labor Code § 203; California Business and Professions Code § 17208; and California Government Code sections 12940, 12960(d) and 12965(b).

**THIRD AFFIRMATIVE DEFENSE**

*Failure to Exhaust Administrative Remedies*

Plaintiff's causes of action for alleged violation of the Fair Employment and Housing Act ("FEHA") against Defendant are barred, in whole or in part, because of Plaintiff's failure to exhaust her administrative remedies.

**FOURTH AFFIRMATIVE DEFENSE**

*Undue Hardship*

The causes of action in Plaintiff's Complaint are barred to the extent the desired accommodation sought by Plaintiff would impose an undue hardship on Defendant's business operations.

///

///

2

**FIFTH AFFIRMATIVE DEFENSE**

*Interactive Process*

The causes of action in Plaintiff's Complaint are barred to the extent Plaintiff failed to participate in the interactive process, which broke down through no fault of Defendant.

**SIXTH AFFIRMATIVE DEFENSE**

*No Willful Conduct*

Plaintiff's Complaint and/or each cause of action therein are barred because Defendant did not willfully, knowingly, or intentionally fail to comply with the compensation provisions of the California Labor Code but rather acted in good faith and had reasonable grounds for believing that Defendant did not violate those provisions.

**SEVENTH AFFIRMATIVE DEFENSE**

*Same Decision*

Plaintiff's Complaint, and each purported cause of action alleged therein, is barred and/or Plaintiff is precluded from any monetary damages because, even assuming *arguendo* that the Court or a jury should find that discriminatory or retaliatory reasons were a factor in any employment decision involving Plaintiff (which Defendant denies), Defendant would have made the same employment decisions with regard to Plaintiff in any case for legitimate, non-discriminatory and non-retaliatory reasons, and the alleged illegal reasons were not factors in motivating Defendants' actions.

**EIGHTH AFFIRMATIVE DEFENSE**

*Managerial Immunity*

Any injuries Plaintiff allegedly sustained as a result of any action by a management employee of Defendant are barred by the doctrine of managerial immunity.

**NINTH AFFIRMATIVE DEFENSE**

*Punitive Damages Unconstitutional*

Although Defendant denies that it has committed or has responsibility for any act that could support the recovery of punitive damages in this lawsuit, to the extent any such act is found, recovery of punitive damages against Defendant is unconstitutional under the United States

Constitution and the California Constitution.

## TENTH AFFIRMATIVE DEFENSE

### *Comparative Fault*

Plaintiff's right to recover damages, if any, is reduced by the extent to which any and all acts, occurrences or damages alleged in the Complaint were proximately caused by Plaintiff's own or another actor's neglect or fault, or failure to deal fairly, reasonably and honestly with Defendant.

## ELEVENTH AFFIRMATIVE DEFENSE

### *Avoidable Consequences/Preventative Remedies*

Plaintiff's Complaint, and each cause of action alleged therein, is barred because, to the extent that any actions of Defendant could be construed as unlawful discrimination, retaliation, or wrongful termination in violation of public policy (all of which Defendant denies), Defendant exercised reasonable care to prevent such conduct and would have taken immediate and appropriate corrective action to remedy and stop any such alleged misconduct if Plaintiff had informed Defendant about the alleged misconduct. Plaintiff, however, failed to utilize the preventative or corrective remedies provided by Defendant and failed to otherwise avoid such harm. Plaintiff's claims are, therefore, barred, in whole or limited in part, by the doctrine of avoidable consequences.

## TWELFTH AFFIRMATIVE DEFENSE

### *Failure to Mitigate*

Plaintiff's claims for damages are barred, in whole or in part, because Plaintiff failed to mitigate her alleged damages.

## THIRTEENTH AFFIRMATIVE DEFENSE

### *Breach of Employee Obligation*

Defendant alleges that the Complaint, and each cause of action therein, is barred in whole or in part, by sections 2854, 2856, 2858, and 2859 of the California Labor Code, respectively, because Plaintiff failed to: (1) use ordinary care and diligence in the performance of her duties, (2) comply substantively with the reasonable directions of her employer, (3) exercise a reasonable degree of skill in performing her duties, and (4) perform her job duties in a proper and skillful

1 manner.

2 **FOURTEENTH AFFIRMATIVE DEFENSE**

3 *Unclean Hands*

4 Plaintiff's Complaint, and each cause of action alleged therein, are barred by the doctrine

5 of unclean hands.

6 **FIFTEENTH AFFIRMATIVE DEFENSE**

7 *Business Necessity / Job Related*

8 As a separate and distinct affirmative defense, Defendant alleges, without admitting that

9 Defendant engaged in any of the acts or omissions alleged in Plaintiff's Complaint, that any such

10 acts or omissions were justified by a business necessity and/or were job related because there exists

11 an overriding business purpose for the safe and efficient operation of the business, and the

12 challenged practice effectively fulfills the business purpose it is supposed to serve.

13 **SIXTEENTH AFFIRMATIVE DEFENSE**

14 *After-Acquired Evidence*

15 To the extent discovery may disclose information which could serve as basis for any

16 adverse action relating to Plaintiff's employment, Plaintiff is barred from recovery by the doctrine

17 of after-acquired evidence, or the doctrine of after-acquired evidence limits and reduces Plaintiff's

18 alleged damages.

19 **SEVENTEENTH AFFIRMATIVE DEFENSE**

20 *Laches*

21 Plaintiff's Complaint is barred, in whole or in part, by the doctrine of laches because

22 Plaintiff did not raise the issues in a timely manner or otherwise placed Defendant on notice such

23 that Defendant could address them.

24 **EIGHTEENTH AFFIRMATIVE DEFENSE**

25 *Workers' Compensation Preemption*

26 Plaintiff's purported claims for emotional distress damages are barred because the

27 exclusive remedy for Plaintiff's alleged emotional distress and other injuries, if any, is before the

28 California Workers' Compensation Appeals Board pursuant to the exclusive remedy provisions of

the California Workers' Compensation Act. (*See* California Labor Code section 3600 *et seq.*) Plaintiff's Complaint alleges an injury compensable under the California Workers' Compensation Act because Plaintiff alleges that her injuries: (1) occurred at a time when both Plaintiff and Defendant were subject to Labor Code section 3600(a); (2) occurred in the course of and incidental to Plaintiff's employment; and (3) were proximately caused by Plaintiff's employment.

## NINETEENTH AFFIRMATIVE DEFENSE

### *Punitive Damages*

Plaintiff's claims for punitive damages are barred under California Civil Code section 3294 and 3295 in that Plaintiff has failed to raise sufficient allegations of malice, oppression, or fraud. Defendant acted in good faith at all times relevant herein.  No act attributed to Defendant was taken with oppression, willfulness, or malice.

## TWENTIETH AFFIRMATIVE DEFENSE

### *Voluntary Waiver of Meal and Rest Breaks*

The Complaint and/or each purported cause of action seeking penalties for failure to provide meal and rest breaks, respectively, is barred in whole or in part to the extent Defendant provided and permitted meal and rest breaks in compliance with California law, and Plaintiff voluntarily waived her right to take the meal or rest breaks as provided.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### *Wage Statements—No Knowledge*

Defendant alleges that, even assuming *arguendo*, Plaintiff was not provided with a proper itemized statement of wages and deductions, Plaintiff is not entitled to recover damages because Defendant's alleged failure to comply with California Labor Code section 226(a) was not a "knowing and intentional failure" under California Labor Code section 226(e).

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### *No Willful Conduct and Good Faith Dispute*

To the extent Plaintiff seeks penalties for any alleged willful failure to comply with the requirements of the California Labor Code, such penalties are barred because the Defendant did

1   not willfully violate any provision of the California Labor Code, and good faith disputes of fact

2   and/or law exists concerning any alleged violations.

3                        **TWENTY-THIRD AFFIRMATIVE DEFENSE**

4                                    *Arbitration*

5          Plaintiff signed an enforceable arbitration agreement that covers the claims asserted in this

6   action.  Plaintiff is in breach of her arbitration agreement, in which Plaintiff agreed to arbitrate all

7   employment-related disputes on an individual basis.  As such, Plaintiff must pursue her claims in

8   individual arbitration, not before this court.

9                           **RESERVATION OF RIGHTS**

10         Defendant specifically reserves the right to assert additional affirmative defenses or to

11  amend this Answer in accordance with the Rules of Civil Procedure.

12                           **PRAYER FOR RELIEF**

13  WHEREFORE, Defendant prays for judgment as follows:

14         1.      That judgment be entered in favor of Defendant, and against Plaintiff;

15         2.      That Plaintiff's Complaint be dismissed in its entirety with prejudice;

16         3.      That Defendant be awarded the costs of suit and attorney's fees; and

17         4.      For such other and further relief as the Court deems just and proper.

18

19  Dated:  August 15, 2025                     JACKSON LEWIS P.C.

20

21                                        By: _____
                                             Benjamin J. Schnayerson
22                                           Liam N. Gaarder-Feingold
                                             Attorneys for Defendant
23                                           TAILORED SHARED SERVICES, LLC
                                             [erroneously sued as TAILORED SHARED
24                                           SERVICES, LLC dba TAILORED
                                             BRANDS, INC.]
25

26

27

28

Def.'s Answer to First Amended Complaint for Damages                    Case No. CGC-25-626353

<u>**PROOF OF SERVICE [CCP § 1013(g) and CRC Rule 2.253]**</u>

I, Larry Nelson, declare that I am employed with the law firm of Jackson Lewis P.C., whose address is 50 California Street, 9th Floor, San Francisco, California 94111-4615; I am over the age of eighteen (18) years and am not a party to this action.

On August 15, 2025, I caused to be e-served the attached **ANSWER TO FIRST AMENDED COMPLAINT FOR DAMAGES** in this action by uploading a true and correct copy thereof, in PDF format, for electronic filing and service by First Legal (a court-approved Electronic Filing Service Provider), pursuant to Local Rule 2.11. Said document(s) to be filed with the Court and e-served on Plaintiff's counsel of record, whose contact information is as follows:

Angela M. Alioto                                          Attorney for Plaintiff
Angela Mia Veronese
LAW OFFICES OF JOSEPH L. ALIOTO          CHRISTINA ROSA
AND ANGELA ALIOTO
700 Montgomery Street
San Francisco, CA 94111-2104
Tel. (415) 434-8700
Fax (415) 438-4638
amv@aliotolawoffice.com
djames@aliotolawoffice.com


Josephine L. Alioto
Jessica Ng
THE VEEN FIRM LLP
20 Haight Street
San Francisco, CA 94102
Tel. (415) 673-4800
Fax: (415) 771-5845
JA.Team@VeenFirm.com


I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

Executed on August 15, 2025, at San Francisco, California.

_____
Larry Nelson